Charleston.

## TRACY v. CLOYD et al.

(Absent, MOORE, JUDGE.)

Decided April 28, 1877.

1. In an action of trover and conversion against two, where the defendants appear and file a joint plea of not guilty and issue is thereon joined, it is competent for the jury to acquit one of the defendants and find the other guilty and assess damages against him.

2. When in such action under such pleadings the jury find both defendants guilty, by a joint verdict, and a motion is made by the defendants to set aside such verdict and grant a new trial, it is competent and proper for the court to grant the motion, if the court is clearly of the opinion that there was no evidence against one of the defendants, before the jury tending to fix a legal liability upon him in the action.

3. If the verdict in such case be set aside as to one of the defendants, no judgment can be rendered against the other.

4. A confederate district commissary in Virginia during the late war between the Government of the United States and the Confederate States is not responsible for the misfeasances and wrongful acts of his sub-agents, unless he co-operated in or authorized the wrong.

This was an action of trover and conversion brought by Rowland J. Tracy against Joseph Cloyd and Thomas G. Shannon, in the circuit court of Mercer county, in which a *supersedeas* was granted to the judgment and

## 20                          SUPREME COURT OF APPEALS

order of said circuit court, upon the petition of the plaintiff below.

The case is sufficiently stated by Haymond, Judge, in his opinion.

*James W. Davis,* for plaintiff, relied upon the following authorities :

Jackson *ex dem. Haines v. Woods et al.,* 5 Johns., 278 ; *Hening v. Hoppock,* 15 N. Y. (1 Smith), 413 ; Hilliard on Torts,' 243, 245, 246 ; *Elliot v. McKay,* 4 Jones, 59 ; Hillard on Torts, p. 246, sec. 9, 10 ; Ib., p. 269, sec. 26 ; 1 Bush (Ky.), 355 ; 2 Ib., 453 ; 5 Bush, 90, 689 ; *Brugh v. Shanks,* 5 Leigh, 598 ; *Hunt v. Bellon,* 9 B. Mon., 391 ; Browne on Actions at Law, 85 ; *Wilson v. Baker,* 4 B. & Ad., 614 ; Arch. N. P., 355, sec. 2 ; *Smith v. Hancock,* 4 Bibb., 222 ; Carpenter's Case, 8 Rep., 148 a ; 3 Tuck. Com., 305, 307 ; 3 Call, 309 ; 4 Tenn., 468 ; 2 Tuck. Com., 307 ; *Goode v. Love,* 4 Leigh, 635 ; *Mays v. Collison,* 6 Leigh, 230 ; Tidd's Pr., 803, 819 ; Bur., 1225 ; 2 Ld. Raym., 1372 ; 1 Stra., 610 ; 8 Mod. Rep., 217 ; 2 Stra., 1108, 1222 ; 2 Esp., 364 ; 2 Hilliard on Torts, 226, sec. 21 ; 311, sec. 9 ; 312, sec. a. ; 3 Am. R., 396 ; 8 Am. R., 396.

*A. Mahood,* for defendants, relied upon the following authorities :

*Bustor's Ex'or v. Wallace,* 4 H. & M., 82 ; 2 Tidd's Pr., 927 ; 1 Wash., 322 ; 2 Tuck. Com., 227 ; Ib. ch. 5, p. 56 ; 5 Johns., 278 ; 2 Bouv. Inst., 35 ; 5 Munf., 483.

HAYMOND, JUDGE :

This is an action of trover and conversion. It is true the declaration at its commencement says that "Rowland J. Tracy complains of Joseph Cloyd and Thomas G. Shannon, who have been summoned to answer him of a plea of trespass on the case, but the count in the declaration, and there is but one, is the com-

mon count in trover and conversion. The declaration seeks to recover from the defendants the value of seven head of cattle, the property of the plaintiff, this is clearly the object of the suit. The value of the cattle is alleged to be $1000.00, and the plaintiff's damages are alleged to be that amount. . The declaration was filed on the first Monday in July, 1869. On the 14th day of June, 1871, the defendants appeared to the plaintiff's declaration in the circuit court of Mercer county, and jointly plead to the declaration the plea of not guilty, and issue was joined upon the.plea, and the cause was continued. At September Term, 1871, the cause was continued on motion of defendants. On the 17th day of October, 1872, the parties appeared in court, and the record states that the defendants demurred generally to the second count in the declaration and to each count thereof, and that the plaintiff joined in the demurrer, and that the court overruled the demurrer. It also appears that at the date last aforesaid a jury was selected and sworn to try the case, but the jury were unable to agree upon a verdict and were for that cause, by consent of the parties, discharged. On the 19th day of October, 1874, the parties again appeared in court by their attorneys, and tendered two special pleas in writing; numbered respectively 1 and 2, to the filing of which the plaintiff objected, and the court sustained the objection. Thereupon the defendants tendered another special plea in writing, numbered 3, to the filing of which the plaintiff objected, and the court sustained the objection. The defendants, then tendered another special plea in writing, numbered 4, to which the plaintiff also objected, but the court overruled the objection and allowed the plea to be filed, and the plaintiff replied generally and specially thereto, and issue was joined. Thereupon a jury was selected, tried and sworn, to well and truly try the issues joined in the cause, &c. The jury found a verdict for the plaintiff, and assessed the plaintiff's damages at $325.00. The defendants, by their attorneys, moved the court to set aside the

verdict and grant a new trial, upon the ground that the same was contrary to the evidence, and the court took time to consider thereof. On the next day, viz. : on the 21st day of October, 1874, the court sustained the defendant's motion and set aside the verdict of the jury, and granted a new trial in the cause, upon the ground there was no evidence to sustain such a verdict against the defendant, Cloyd. To this order of the circuit court the plaintiff, upon petition and assignment of error, obtained from one of the judges of this Court, in vacation, a *supersedeas*, and it is now to be determined whether the court erred in granting a new trial on motion of defendants. The plaintiff excepted to the opinion and judgment of the court in granting a new trial, and the bill of exceptions is in due form, containing the evidence, &c., given to the jury at the trial.

At this point, I deem it proper to say, that while the evidence given to the jury at the trial by the plaintiff, as disclosed by the record, does tend to fix a liability upon the defendant Shannon and would have authorized a verdict against him upon the issues joined, I am clear in my mind that the evidence given to the jury by the plaintiff did not authorize the jury to find a verdict against the defendant, Cloyd, upon the plea of not guilty and issue thereon. The evidence given by the defendants to the jury is perhaps more against the defendant Cloyd than the evidence of the plaintiff. It seems clear to my mind that the evidence of the plaintiff wholly fails to fix any legal liability upon the defendant Cloyd in this action. It may safely be asserted that the evidence of the plaintiff does not even tend to establish guilt against the defendant Cloyd under the issue. Furthermore, it seems to me that, taking the evidence of the plaintiffs and defendants together, as shown in the bill of exceptions, and we are not authorized to look beyond it, that the whole evidence given to the jury was insufficient to authorize the jury to find a verdict of guilty against the defendant Cloyd upon the pleadings. In

other words, it seems to me that the evidence is insufficient to establish any legal liability in this cause against the defendant Cloyd, and that the verdict of the jury is not warranted or authorized by the evidence. Upon this point my mind is clear, and I am without doubt. Before making any further remarks upon the evidence and facts proven, I deem it proper to ascertain and determine some questions and principles of law referred to in argument before us, and applicable to this cause and actions of trover generally, as it is necessary to do so for a proper decision of the questions arising in this cause. It seems "that to entitle the plaintiff to recover in trover, two points are essential to be proved : 1st, property in the plaintiff, and a right of possession at the time of the conversion ; and 2d, a conversion of the thing by the defendant to his own use." 2d Greenleaf, § 636. " The property in the plaintiff may be either general and absolute, or only special," same 637. "A lower degree of interest will sometimes suffice against a stranger ; for a mere wrongdoer is not permitted to question the title of a person in the actual possession and custody of the goods whose possession he has wrongfully invaded. The naked possession of goods with claim of right is sufficient evidence of title, against one who shows no better right," same. " There must be also shown in the plaintiff a right to the *present possession* of the goods." If he has only a special property, there must ordinarily be evidence of actual possession ; but the general property has possession annexed to it by construction of law," same 640. The plaintiff must, in the next place, show that the defendant has converted the goods to his own use. A *conversion*, in the sense of the law of trover, consists either in the appropriation of the thing to the party's own use and beneficial enjoyment, or in its destruction, or in exercising dominion over it, in exclusion or defiance of the plaintiff's right, or in withholding the possession from the plaintiff under a claim of title. It may, therefore, be either direct, or constructive, and of

course is proved either directly or by inference. Same 642, and authorities there cited.

Every *unlawful taking*, with intent to apply the goods to the use of the taker or of some other person than the owner, or having the effect of destroying or altering their nature is a conversion. Same 642 and authorities there cited. Hilliard on Torts, 2d vol., pages 101 and 102, says: "But the prevailing doctrine now is, that trover may be maintained for *taking* goods whenever trespass will lie ; that not only a wrongful detention, after demand, but an unlawful taking of the goods of another, with intent to convert them to the use of the taker, or a wrongful assumption of property, is itself a conversion, and not merely evidence of it. See also 2 Tuck. Com., pp. 88 and 89, under the head "Of the evidence": Persons become trespassers by their own acts or by relation. Thus if A. commit a trespass for the benefit of B., and B. *assent* to it, either *prior* to its commission or *subsequently*, he becomes a trespasser by relation, and is equally liable as A.; he becomes a trespasser by prior or subsequent assent. He cannot become a trespasser, however, by subsequent assent, unless the trespass was committed for his benefit. To this rule, however, there may be and are some exceptions. Generally, but not universally, unless a party commit a trespass himself, or assent to it, either before or subsequently, (which assent may be either express or implied from his acts), he is not liable. (Brown) on Actions at Law, 112, 113, Law Library, 86.

It seems that masters are liable to third persons for the misfeasances, and negligencies, and omissions of duty of their servants, in all cases within the scope of their employment. So the principal, in like manner, is liable to third persons for the like misfeasances, and omissions of duty of his agent, leaving him to his remedy, and against the agent in all cases, when the tort is of such a nature as that he is entitled to compensation. This is the law as laid down by Judge Story, in his val-

uable work on Agency, chapter 12, pp. 367 and 368, applicable to private agents. It is further said by Judge Story, at pp. 368 and 369 of same book, that " this liability is not limited to principals who are mere private persons, but to private corporations, for the misfeasances, negligences and omissions of duty of their agents, in the course of their employment, wherever they are duly appointed. Such private agent is also personally liable to third persons, for his own misfeasances and positive wrongs. But he is not in general (for there are some exceptions) liable to third persons for his own nonfeasances or omissions of duty in the course of his employment. His liability in these latter cases is solely to his principal ; there being no privity between him and such third persons ; but the privity exists only between him and his principal. Same book and authorities there cited, page 370, section 308. Under the head of the " Non-liability of agents for their non-feasances and omissions of duty, except to their own principals, Judge Story, at section 310 of same book, says : " Thus, if the servant of a common carrier negligently loses a parcel of goods intrusted to him, the principal, and not the servant, is responsible to the bailor, or the owner. So, if an under sheriff is guilty of a negligent breach of duty, an action lies by the injured party against the high sheriff, and not against the deputy personally, for his negligence. If the servant in shoeing the horse has pricked him, or has maliciously or wantonly lamed him, an action will lie personally against the servant himself." The high sheriff, though a public officer, is held responsible for the acts of his deputy from public policy. Brown on Actions at Law, 113, Law Library 86. He selects his own deputy for his own benefit, and pays him for his services out of his own pocket.

In *Harris v. Nichols,* 5 Munf., R. 483, it was held that where the act of the servant or agent was neither authorized by his principal nor committed in the usual course of his duty, as such, but was a wilful and unau-

1877.
January Term.

Tracy
v.
Cloyd et al.

thorized trespass, the principal is not liable. The syl-
labus of the case is, "An employer or master is in gen-
eral not responsible for a wilful and unauthorized tres-
pass committed by his agent, overseer or servant."

The plaintiff's evidence tends to prove that the de-
fendant, Shannon, unlawfully took the plaintiff's cattle
in the declaration mentioned, and drove them many
miles from the plaintiff's farm where he found them with
intent to deprive the plaintiff of them, but it clearly fails
to prove that in so doing and while so doing he was the
authorized agent of defendant Cloyd for so doing or for
any other purpose. The plaintiff rested his case without
proving the agency of said Shannon. The only evi-
dence offered by the plaintiff touching the agency of
Shannon is contained in the evidence of Mrs. Crawford,
and all she says upon the subject is that at the time Shan-
non took the cattle he said that "he had authority
from Maj. Cloyd to take cattle." This declaration
of Shannon, made at the time of taking of the cattle
in the absence of defendant Cloyd, is not sufficient
to prove that Shannon was the agent of defendant
Cloyd to take said cattle unlawfully or otherwise. The
declarations of Shannon made at the time of the com-
mission of the tort in the absence of Cloyd are not
evidence against Cloyd and could not properly be
considered under any circumstances against or to the
prejudice of Cloyd, unless his agency is otherwise proved,
or other evidence is given to the jury tending to prove
his agency. But the defendants, after the plaintiff had
introduced all the evidence he desired, and rested his
case before the jury, introduced the deposition of
the defendant Shannon, which had been taken
by the plaintiff in the cause to be read as evidence, which
proved that in "the year 1864 he (Shannon) was an agent
of defendant Cloyd, who was the chief commissary of
subsistance for the 4th district of Virginia; that in 1864,
he had gone to East run, in Mercer county, near French's
mill, to a farm where there was a woman who called her-

self Tracy; that he did not know the plaintiff in this

suit; that he offered to buy of her cattle, and she refused to sell; that he read to her his instructions, and she then consented to sell, and agreed that he and a man who was with him, whose name he did not recollect, might fix the weight of the cattle; that he had consented for some to be left out, and he did leave one or more, but did not remember the number, but left what she required, and took six or seven head away, and delivered to Glendy, the agent of Cloyd in the county of Palaski, and that soon afterwards he was ordered to report to Capt. Henry, and never seen or heard of the cattle afterwards. That at the same time he got other cattle out of said county of Mercer, amounting in all to 75 or 80 head." By the said bill of exceptions, it also appears that the defendants, before the evidence of defendant Shannon was read, by the depositions of Glendy, defendant Cloyd, Trolinger and Emerson, as the court certifies, proved that "the defendant, Joseph Cloyd, was in the year 1864 the chief commissary of subsistence of the 4th district of Virginia, and acted as such; that he had under him subordinate agents to-wit: the defendant Thomas Shannon, the said Trollinger, Glendy, McClintock and Hamberger; and that the witness Emerson, was during said year, his office clerk, kept his books and his papers, made his reports to the departments and issued his orders; that the cattle obtained by said agents were delivered at such points and turned over to such authorities as the said Cloyd directed, and that he did not see them; that they remained under the control of said agents until so turned over; that the cattle obtained by agent Thomas G. Shannon, claimed by the plaintiff, were turned over and received by the agent Glendy, in the county of Pulaski, Virginia, and were never seen by the defendant Cloyd; that defendant Cloyd never got said cattle, nor any part of the proceeds thereof, nor never appropriated the same, or any part thereof, to his own use; that he is a man of irreproach-

able integrity and character; made no charge against the Confederate government for his own services, furnished his own office, and boarded himself and his agent Emerson, and his family, and his horse, without any charge, and at the close of the war had but few cattle on his farm, and those of his own raising; that cattle had been procured by his agents remaining on hands at the close of the war, had been taken by squads of soldiers, and that said Cloyd had never used, taken or appropriated any of them, or any of the proceeds of them, to his own use, and that the cattle that had been obtained from the plaintiff, Tracy's possession had been turned over to the Confederate government." It further appears by the said bill of exceptions that the defendants introduced as a witness, Napoleon B. French, "and proved by him that in the fall of 1864, he resided near Christiansburg, in the county of Montgomery, Virginia, that a neighbor of his, one Hobson, was the agent for the purchase of supplies for the use of the Richmond and Danville Railroad company, which said road was engaged in transporting troops, supplies and munitions of war for the Confederate government; that at the instance of Hobson, he undertook to obtain supplies for said railroad company, and that finding the country had been stripped, by the Confederate agents, of cattle, and that it would be very difficult, if not impossible, for him to get any, he went to the defendant Cloyd, and requested him to turn over to him, for the use of the said railroad company, some of the cattle under his control for the Confederate Government; that said Cloyd refused to do so, unless the commander of the department would direct it to be done; that he (witness) then went to General Echols, the said commander, at Dublin, and the said Echols issued an order to Cloyd to turn over to the said witness some cattle for the uses of said railroad, and that thereupon said Cloyd, either in writing or verbally, authorized the witness to go to his (Cloyd's) agent, the defendant Shannon, in the county of Giles, and get cattle from him;

that witness did go to said Shannon, and did obtain from

a barren pasture, in about three miles from defendant
Shannon's house, on Walker's creek, in Giles county, a
lot of cattle, amongst which, as said Shannon told wit-
ness, were the cattle he got from Tracy's farm in Mercer
county; and that said cattle were then driven by the
witness and the said Shannon from the county of Giles
to the county of Pulaski, where the cattle were weighed;
and he (witness) drove them to Christiansburg and
turned them over to Hobson, who paid for them, at the
rate of 30 cents per pound, and witness either paid the
money, or saw Hobson pay the money, to Emerson, clerk
of defendant Cloyd, and the cattle were taken by Hob-
son in the direction of Danville." The plaintiff's evi-
dence proves that the cattle claimed were taken by de-
fendant Shannon, in October, 1864, and taken from the
farm of plaintiff, in Mercer county, in the absence of the
plaintiff, who was then in the confederate army as a con-
scripted soldier. It has, heretofore, been held by this
Court, in more than one case, that the so-called Confed-
erate government was a *de facto* government, and main-
tained its jurisdiction, and the jurisdiction of the state gov-
ernment, at Richmond, for several years by paramount
force over most of the State of Virginia, and a part of the
territory embraced within the State of West Virginia.
This was so during the whole of the year 1864. Thus it
seems that the defendant Cloyd was, at the time the plain-
tiff's cattle were taken, and afterwards, a comissary of said
Confederate government for the fourth district of Vir-
ginia, including 22 counties, and that as such officer and
public agent of said *de facto* government, he had his
sub-agents, of whom the defendant, Shannon, was one.

Judge Story, in his work on Agency, Bennett's edi-
tion, in section 319, says: "And here the doctrine is
now firmly established (subject to the qualifications here-
inafter stated) that public officers and agents are not re-
sponsible for the misfeasances, or positive wrongs, or for
the non-feasances, or negligences, or omissions of duty

1877.
January Term.

Tracy
v.
Cloyd et el.

of the sub-agents, or servants, or other persons properly employed by, and under them, in the discharge of their official duties." Again at section 319 $a$, he says : " They are not responsible, either to the government itself, or to third persons, for the misfeasances, or negligences, or omissions of duty of the sub-agents, clerks, and servants so employed under them, unless, indeed, they are guilty of ordinary negligence at least, in not selecting persons of suitable skill, or in not exercising a reasonable super-intendence and vigilance over their acts and doings. In this respect their responsibility does not seem to differ from that of private agents, who employ sub-agents at the request of their principals. See also sections 319 $b$. and 320. Again, Judge Story, in same book, section 321, says : " The rule which we have been considering, that when persons are acting as public agents, they are responsible only for their own misfeasances and negli-gence, and (as we have seen) not for the misfeasances and negligences of those who are employed under them, if they have employed persons of suitable skill and abil-ity, and have not co-operated in · or authorized the wrong, is not confined to public officers, or agents of the government, properly so-called, in a strict legal sense ; but it equally applies to other public officers or agents, engaged in the public service, or acting for public ob-jects, whether their appointments emanate from particu-lar public bodies, or are derived from general laws, and whether those objects are of a local, or of a general na-ture. Then if the doctrine of *respondeat superior* were applied to such agencies, it would operate as a serious discouragement to persons who perform public func-tions, many of which are rendered gratuitously, and all of which are highly important to the public interest. In this respect, their case is distinguishable from that of persons acting for their own benefit, or employing others for their own benefit. But the party who suffers the in-jury under such circumstances, is not without remedy ; for he may maintain a suit against the immediate wrong

doer. Upon this ground it has been held, that the trustees of a public turnpike are not liable for the misfeasances or negligences of sub-agents employed by them in the performance of their duty, unless they have directed the act to be done, or have personally co-operated in the negligence. *Hall v. Smith*, 2 Bing. R., 156; *Hains v. Baker*, 4 M. & S., 47. The same doctrine has been applied to public officers acting in the army or navy, who are held responsible for their own acts and negligences, but are not held responsible for the misfeasances and negligences of the subordinate officers under them, who indeed, are not ordinarily appointed by them, but are appointed by the government itself. Thus it has been held, that a captain of a sloop-of-war is not answerable for any damage done by her running down another vessel, the mischief appearing to have been done during the watch of the lieutenant who was upon deck, and who had the actual direction and management of the steering and navigating of the sloop at the time, when the captain was not upon deck, nor was not called there by his duty. Story on Agency, Bennett's ed., section 322.

The defendant Cloyd being at the time of the taking of the cattle in question, a commissary of the character proven in the cause, and the defendant Shannon a sub-agent employed under him, it seems to me clear that the rules of law which I have referred to and quoted as applicable to public agents and their sub-agents, should, under the circumstances of this case, as disclosed by the record in this case, be applied to the defendant Cloyd, and he should have the benefit thereof. Entertaining these views, it is clear to my mind that the plaintiff's evidence before the jury did not authorize the jury to find the defendant Cloyd guilty, nor did the whole evidence before the jury authorize the verdict as found by the jury, as to said Cloyd.

The declaration being in tort, and defendants having plead jointly, it was competent for the jury to have

found defendant Shannon guilty, and the defendant Cloyd not guilty. Tidd. Pr., 3d Am. Ed. from 9th London Ed., top page 895, side p. 896. Jackson *ex dem. Haines and others v. Woods and others*, 5 Johns. R., 278, 2d Hillard on Torts, 2d Ed., pp. 331 332. But the court set aside the verdict of the jury as to both defendants and granted a new trial in the cause. Was this proper, or should the court only have set aside the verdict as to Cloyd? The motion to set aside the verdict of the jury and grant a new trial, was the joint motion of the defendants. In the second volume of Tidd's Practice, before referred to, it is stated that " A new trial cannot be granted in *civil cases*, at the instance of one of several defendants; nor for part only of the cause of action. And, therefore, when one of four issues was found against evidence, the court granted a new trial, not only as to such issue, for that they said could not be, but for the whole. But then the issue found against evidence must be a material one; but, if two or three issues are found against evidence, yet if the material issues in the cause be agreeable to the evidence, the court will not grant a new trial." And he cites in support of these propositions: 3 Salk. 362; 12 Mod., 275; 2 Str., 814; 2 Bur., 1224; 1 Blac. Rep., 298 S. C.; 2 Str., 814; 3 Wils., 47; *Rex v. Pool*, E. 1734; Bull. *N. P.*, 326; *Dexter v. Barrowby*, E. 25; Geo. II.; Bull. *N. P.*, 326.

Whether these rules may each properly be applied to all verdicts in civil cases at this day under the legislation of this State, or even at common law, it is not necessary to determine at this time. It is declared, however, by Hillard, in his 2d volume on Torts, 3d edition, p. 314, that " where several defendants in trespass plead one plea, and a joint verdict and damages are found against all, judgment must be rendered jointly against all. And if it be set aside as to part, no judgment can be rendered against the others. Though, where part are acquitted and part found guilty, setting aside the verdict

as to the latter does not affect its validity as to the former." In support of these propositions he cites *Cunningham v. Dyer*, 2 Mon., 50; *Brown v. Burrus*, 8 Miss., 26.

In the case of *Boswell et al. v. Jones*, 1 Wash., 417, in case of trespass against two persons where the defendants plead jointly not guilty, the jury found a verdict of acquittal as to one, and of guilty against the other. The convicted party alone moved for a new trial, and the court granted the motion and granted the new trial as to both defendants. This was held to be error. Tucker, in his Commentaries, 2d vol., Book 3, chapter 5, under the head of "Assault and Battery," says: "The jury, in estimating their damages, should give what the most culpable ought to pay, 4 Esp., Ca. 158. They may, however, find some guilty and others not guilty, and where no part of the plaintiff's evidence applies to one, he must have a verdict, and the plaintiff must go on against the rest."

Upon the whole it seems to me that the court did not err in setting aside the verdict of the jury and granting a new trial. Some questions have been made in relation to the ruling of the court in overruling certain exceptions taken and made by the plaintiff to the regularity and admissibility of certain depositions taken by defendants and read in part to the jury as evidence. I don't think, under the view I have taken of this case, that the plaintiff has been prejudiced in anywise by said depositions, as it is clear to my mind that the plaintiff was not entitled to a verdict against the defendants jointly on the plea of not guilty, if the defendant had produced no evidence whatever. And, further, the plaintiff's *supersedeas* is granted in this case to the order and judgment of the court granting a new trial on the motion of the defendants. I deem it proper to remark, however, that that the only pleas upon which issue was joined in this cause, was the plea of not guilty, and defendant's special plea No. 4. This plea No. 4, the court

refused to reject, but admitted it, though objected to by plaintiff. This plea, I think, is not sufficient. It is intended to be a special plea of justification or excuse; and it should, therefore, admit or confess the fact which the plea in question does not do; 1st Chitty on Pl., 2d American Edition, side page 516. The plea in question neither admits or denies the fact. It is, also, too general in its terms. It should allege more specifically the facts, or the authority therefor, so that the court may judge whether the facts or law relied on as a bar to the action, was in accordance with the usages of civilized warfare. The plaintiff, however, has not been prejudiced as yet by the admission of said plea No. 4, for the jury found the issue joined upon it in favor of the plaintiff and against the defendants. But if the plea remains in the record as pleaded, and is had, the plaintiff may thereby be prejudiced at another trial, should one be had. I do not now, however, determine finally as to the sufficiency of said plea No. 4, as the question will more properly arise after another trial, if verdict and judgment should be against plaintiff. An appeal, or writ of error, does not lie to this Court in an action at law, from the ruling of the circuit court in admitting a plea. But the correctness or incorrectness of the ruling of the court in such case may involve the correctness or incorrectness of the final judgment upon writ of error or *supersedeas* in this Court.

For the foregoing reasons the judgment and order of the circuit court, rendered in this cause on the 21st day of October, 1874, setting aside the verdict of the jury rendered therein and granting a new trial, must be affirmed with costs and $30 damages to the appellees.

Judges Green and Johnson concurred in the foregoing opinion.

JUDGMENT AFFIRMED.