# CHARLESTON.

## DOANE v. PARSONS PULP & LUMBER COMPANY.

Submitted January 18, 1916.   Decided January 25, 1916.

1. APPEAL AND ERROR—*Continuance—Discretionary Ruling—Refusal of Continuance.*

   A motion for continuance is generally addressed to the sound discretion of the court under all the circumstances of the case, and although the appellate court will review the action of the inferior court on such matters, it will not reverse a judgment on that ground unless such action was plainly erroneous.   (p. 458).

2. SAME—*Ground for Reversal—Refusal of Continuance.*

   If a party be ruled into a trial, after having made a motion for a continuance, and it appears that he was entitled to a continuance, a judgment against him upon such trial will be reversed by an appellate court, but the appellate court will not reverse the judgment of the inferior court for such reason unless its action was plainly erroneous.   (p. 458).

Error to Circuit Court, Randolph County.

Action of trespass on the case by W. A. Doane against the Parsons Pulp & Lumber Company.   Judgment for plaintiff, and defendant brings error.

> *Reversed and remanded for new trial.*

*Louis A. Johnson,* and *Steptoe & Johnson,* and *E. A. Bowers,* for plaintiff in error.

*Arnold & Arnold,* for defendant in error.

MASON, JUDGE:

This is an action of trespass on the case, instituted in the circuit court of Randolph County, at March rules, 1914. At a special term of the court held in July, 1914, the defendant appeared and demurred; the demurrer was overruled, and the case continued by consent. On the 20th day of November, 1914, an order was entered on motion of the plaintiff, directing the clerk in making up the civil docket for the February term, 1915, to place this case as first for trial at said term of court. Issue on a plea of not guilty was made up February 26, 1915.

The declaration contains three counts, and alleges substantially the following cause of action, namely: That at the time of the accident, the defendant "was lawfully possessed of a certain large saw mill, lumber yard, etc., with the necessary appurtenant yard engines and engines for the purpose of hauling lumber and logs, and the defendant being so engaged as aforesaid, then and there employed plaintiff to engage in said work as an engineer to operate its said yard engine for the purpose of removing cars of lumber from the docks to its siding and in placing and removing cars with said engine. And it then and there became and was the duty of the said defendant to use due and proper care and caution that plaintiff should be provided with good, proper, safe and suitable engines and appliances to be used by him in the said employment as aforesaid, and that the said plaintiff should be secure and safe in all respects in his employment from injury incident thereto, against which ordinary care could avail, while so engaged for said defendant in his said work; yet the said defendant, not regarding his duty in said behalf, did not use due and proper care and caution that said plaintiff should be provided with good, proper, safe and suitable engines and appliances to be used by him in said employment as aforesaid, and that said plaintiff should be secure in all respects in his employment against which ordinary care could avail, while so engaged for said defendant in said work from any injury incident thereto, but wholly neglected so to do; on the contrary said defendant then and there provided for and suffered to be used by said plaintiff in and while engaged in his business as engineer on a yard engine, a certain insecure, unsafe and unsuitable engine, which said engine was of ancient and antique style and the guards protecting the cog wheels and the cog wheels from the pedestal box on said engine had been broken off and destroyed leaving the said cog wheels exposed and open, without any covering whatsoever for the protection of plaintiff from injury thereby. And while the said plaintiff was then and there operating said yard engine for the said defendant as aforesaid, in the lawful discharge of his duties, employment and labors as aforesaid, and without negligence on his part he the said plaintiff then

and there had his right hand caught in said machinery and was injured.''

It is also alleged as negligence on the part of the defendant, that said engine was insecure, unsafe, and unsuitable, and that it was old, antiquated, and in bad repair; and also that defendant did not provide plaintiff with any helper or assistant.

At the February term, 1915, the defendant moved the court to continue the case until the next term, on account of the absence of B. F. Miller, who had been subpoenaed as a witness for defendant, and was sick and not able to be present. In support of his motion, the defendant filed the affidavit of a physician stating that Miller was sick and confined to his residence and could not safely appear as a witness; also the separate affidavits of Louis A. Johnson and E. A. Bowers, of counsel for defendant. From their affidavits it appears that the said Miller had charge of the machinery in and about the defendant's mill at the time the injury is said to have occurred; that he is an important and material witness for defendant; that his evidence is material to the issue made by the pleadings; that the defendant can not prove the same facts by any other person that can be proved by Miller; and that he could not safely go to trial in the absence of Miller. Mr. Bowers in his affidavit says: ''Affiant further says that from the nature of this case it is not practicable or possible for counsel for defendant, who are not soothsayers or prophets, to foretell or anticipate with any degree of certainty what evidence will be introduced by plaintiff in support of the averments of his declaration, in order to enable defendant to have taken or yet to take the deposition of its said witness Miller upon matters and things within his knowledge, and he is informed, which would be or might be competent or relevant to meet the evidence of plaintiff upon the trial of this action; and therefore affiant says it is not practicable to take the deposition of said witness Miller; and that in the opinion of affiant the actual presence of said witness Miller on the trial of said action is important and essential to the full protection of the rights of defendant in said action, and defendant can not safely go to trial without the presence of said witness Miller.''

Section 6, Chapter 131 of the Code, provides that "If a continuance be asked because of the absence of a witness, an affidavit must be filed, if required by the party opposing, setting forth, in addition to other matters required in order to obtain a continuance, the name of the witness and the testimony he is expected to give, and the affiant must if required by any opposing party, submit to cross-examination in open court upon the matters set forth in such affidavit."

The record of February 24, 1915, states that, "On the 18 day of February, 1915, came the parties by their attorneys and thereupon the defendant moved the court to grant it a continuance in this action at this term of the court on account of the inability of its witness, B. F. Miller, to attend this term of court and in support of said motion filed the affidavits of Dr. T. B. Crittendon and Louis A. Johnson, both of which affidavits were sworn to on the 15th day of February, 1915; and the plaintiff by its attorney objected to the sufficiency of said affidavits, because among other things they did not set forth the facts which defendant desired to prove by the witness Miller nor the testimony which said witness is expected to give, and because the affiant Louis A. Johnson is not produced in open court to be subject to cross-examination upon the subject matter of his affidavit, and the plaintiff further in resistence of said motion for a continuance demanded and offered that the deposition of the witness Miller might be taken forthwith to be used in the trial of said case. and offered to appear for the taking of such deposition, which motion for the taking of said deposition was resisted by the defendant who declined to take the same, * * * and the defendant filed in further support of its motion for a continuance, on the 23rd day of February, 1915, the affidavit of E. A. Bowers, dated the 19th day of February, 1915."

The statute does not require an affidavit to be filed setting forth the name of the absent witness or the testimony he is expected to give, unless required by the opposing party, nor does it require that the affiant shall submit to cross-examination in open court upon the matters set forth in the affidavit, unless required by the opposing party. No objections were made to the affidavit of Mr. Bowers. The court refused to

continue the case, and the defendant excepted. Two days later a jury was empaneled, and the trial commenced.

It is insisted by counsel for the defendant that the court erred in refusing to continue the case. "A motion for continuance is generally addressed to the sound discretion of the court, under all the circumstances of the case, and although an appellate court will supervise the action of an inferior court on such a motion, it will not reverse a judgment on that ground unless such action was plainly erroneous. But when a continuance has been improperly refused, and any party aggrieved thereby brings the case to this court upon appeal, the case will be for that cause reversed." 3 Enc. Dig. Va. & W. Va. 304. The action of the trial court in the matter of a continuance is as necessary a subject of review in an appellate court as its action in any other matter. Great injustice may be done a party by forcing him into trial unprepared. It is reversible error to improperly refuse a motion for continuance. We think the Supreme Court of Virginia correctly states the rule in the case of *Myers* v. *Trice*, 86 Va. 835: "A motion for a continuance is addressed to the sound discretion of the court, in view of all the circumstances of the case; and an appellate court will review and reverse the action of an inferior court, if, in the exercise of its discretion, it has harshly or unjustly refused a continuance, and especially where there is nothing in the circumstances to warrant the conclusion that the real purpose in moving for a continuance is to delay or evade a trial, and not to prepare for it."

But, as has often been held by this court, a judgment will not be reversed on this ground unless the action of the trial court was plainly wrong. Tried by these rules, did the circuit court err in refusing the continuance? The proposed witness was an employe of the defendant, in charge of its machinery in and about the mill; among this machinery was the engine about which plaintiff complains, and hence Miller knew its condition, the proper use of it, and in fact must have known all about the facts of which the plaintiff complains, and out of which the injury arose. But as stated by Mr. Bowers in his affidavit, from the nature and character of the declaration and the issues involved in the case, it was not practicable to foretell or anticipate with any degree of certainty in ad-

vance what he would be called upon to testify about. We think this is made sufficiently plain by the affidavits of Johnson and Bowers. The necessity for the presence of Miller is clearly shown by the reference made to him on the trial, as the defendant's master mechanic. The following questions were asked the plaintiff as a witness on the trial, and answers given:

"What was the condition of the engine at the time you received this injury?  A.  It was in bad shape all around.

Q.  How about the guards?

A.  They were off; they was no guards at all.

Q.  Did you complain of this engine being in this shape?

A.  Yes sir.

Q.  To whom  A.  To Mr. Miller.

Q.  Who is he?  A.  Master Mechanic.

Q.  Did he take steps to have it fixed?  A.  No sir.

Q.  Was there a fireman on the engine with you?

A.  No; no fireman; a brakeman, and when there was no switching to do, he worked in the yard; there was no fireman.

Q.  Was there an engine helper with you that morning?

A.  No sir; there was a brakeman out; he was with me all forenoon.

Q.  Was it unsafe to send this engine out without an engine helper with you?  A.  Yes it was unsafe.

Q.  Did you ever have to get off this engine for other purposes and leave it running?  A.  Yes sir.

Q.  For what purposes?  A.  When it would be sent to the roundhouse I would be alone; in order to get it out of the track.

Q.  You have said this engine was out of repair and in bad condition, something to that effect. If the engine had been in good shape, could you have reasonably detected this knocking without getting off?

A.  Well yes, I may have, if the engine had been in good shape there would have been no knocking.

Q.  Do you remember how long it was from the time you complained to the Master Mechanic until this accident happened?

A.  Well, when I first taken the engine, I found a crack in the crank shaft of the engine; I brought him around and

showed him the crack in the crank shaft; he looked at it and I says 'We ought to have a bank around it so it will not break off.' He looked at it and then turned around and walked off. The next day I asked him where there was some journal boxes, he said 'Down in the tool house' and I went down and found an old crank shaft with a strap on it and I took it off and put in this engine. Several things I asked him about,—

Q. How long was it, as near as you can tell, before you went to the Master Mechanic about your engine, when you say he turned and walked away from you, until this accident happened?

A. The first time about a month or six weeks after taking the engine the first time.

Q. How long would that have been before the accident happened?

A. Well about three months maybe; the next time I told him the babbit and brass on number two engine was loose, he said he had other work to do and to key it up some way."

Milton Carr, a witness for plaintiff, referred to Miller in his examination as follows:

"Q. Did you have any conversation with the foreman or master mechanic about this engine? A. Yes, sir.

Q. When? A. Along in summer somewhere, I don't remember just what month.

Q. Were any general repairs placed on that engine after you had this talk with the Master Mechanic? A. Not to my knowledge.

Q. Do I understand you to say that there was no repairs placed on the engine from the time of the conversation you had with the Master Mechanic in the summer to the time the accident occurred?

A. I was talking to him about rebuilding five and he agreed with me that it should be rebuilt but it never was, no sir, not to my knowledge."

It thus appears from the affidavits of Johnson and Bowers, as well as from what occurred upon the trial, that Miller was an important and necessary witness for the defendant. Indeed from the character of the suit and the testimony necessary to support it, it must have been apparent to all, from

these affidavits, that Miller, on account of his relation to the parties and his peculiar knowledge of the facts, would be an important and necessary witness. He was at home sick, and had been for two months, and could not then be brought into court as a witness, but was convalescing. His absence was caused through no fault or negligence on the part of the defendant. So far as appears, his attendance could be had by a continuance of the case until the next term of court. There does not seem to have been any unnecessary delay of the case. It had been continued at the last term of court by consent. The trial had been expedited by an order of the court transferring it from its place on the docket and directing the clerk to place it as first for trial at the February term.

The circumstances which made a continuance necessary at that term of court, were beyond the control of the court or parties, and without their fault. We think the defendant should not be made to suffer for conditions which it could not control, and that a continuance should have been given it, under the circumstances. The refusal to do so was error, and calls for a reversal of the judgment and a new trial.

*Reversed and remanded for new trial.*