# CHARLESTON.

## STATE v. SUSIE McDONIE

Submitted March 25, 1924.    Decided April 8, 1924.

1.  CRIMINAL LAW.—*Motion for Continuance Addressed to Discretion of Court.*

    A motion for continuance is always addressed to the sound discretion of the trial court under all the circumstances of the case.  (p. 222).

2.  ASSAULT AND BATTERY.—*Punishment of Child by Parent in Excess of That Contemplated by Law is Proof of Malice and Guilty Intent.*

    Though a parent has a legal right to punish and chastise his child, where the jury finds that such punishment was in excess of that contemplated by law, such fact may be treated as proof of malice on the part of the parent as well as of guilty intent.  (p. 223).

3.  CRIMINAL LAW.—*Refusal of Instruction Not Supported by the Evidence Proper.*

    An instruction so drawn as to convey to the jury the inference that there is evidence to support a theory advanced by a party to an action, when in fact the evidence is all against such theory, may properly be refused by the trial court.  (p. 223).

Error to Circuit Court, Mason County.

Susie McDonie was convicted of felonious assault, and she brings error.

*Affirmed.*

*B. H. Blagg* and *Somerville & Somerville,* for plaintiff in error.

*E. T. England,* Attorney General, *R. A. Blessing,* Assistant Attorney General and *Robert L. Hogg,* Prosecuting Attorney, for the State.

MILLER, JUDGE:

Defendant was indicted jointly with her husband Joe McDonie, charged with having committed a malicious and

96 W. Va.

felonious assault upon one James Gibson, a child of the age of six years, the indictment alleging that each of them committed the offense charged, and further alleging that the defendant Susie McDonie unlawfully, maliciously and feloniously was present counseling, aiding, abetting and assisting the said Joe McDonie in committing the acts complained of. The husband was convicted of the offense charged, and upon writ of error to this court the judgment thereon was affirmed. *State* v. *Joe McDonie,* 89 W. Va. 185.

From the judgment in this case, sentencing defendant to imprisonment in the state penitentiary for a period of two years, she has prosecuted this writ of error.

The facts adduced on the trial are substantially the same as those in evidence on the trial of Joe McDonie. The child upon whom the assault was alleged to have been made, was six years of age, and the son of defendant. Joe McDonie was the step-father. It is not shown that defendant actually committed any of the physical acts complained of. The evidence of the State tends to prove that she fully and freely acquiesced in the cruel punishment inflicted on her son by the step-father; that she brought the rods or switches used, and stood by, not only without any attempt to interfere, but apparently aiding her husband in every way as testified to by a witness present at the time.

The only eye-witness to the assault, besides the McDonies, was the witness Mrs. William Cassler, who was at the time living or rooming in the home of the defendant and her husband. She did not testify on the trial of Joe McDonie.

It appears that on the evening before the particular occurrence which led to the arrest of defendant and her husband, the boy had absented himself from home, and was found at the home of his grandfather, the father of Mrs. McDonie, and brought home some time just after midnight by an uncle. Mrs. Cassler says that after the uncle had gone, Joe McDonie brought in a bundle of switches and handed them to the boy, who in turn gave them to her. She says there were ten of them, and the smallest was as large as her largest finger. That then McDonie began whipping the boy in the dining room, and slung him against the wall,

while defendant sat there and witnessed the assault; that the child ran up stairs, followed by McDonie, and that she and defendant followed them up; that the husband ordered the boy to get into the bath tub and take his clothing off, which he did, and then turned the hot water on; and that all the time the child was pleading with his mother to take him out, and tried to turn the water off himself, but the husband threw him back several times brutally against the side of the tub; that "they" tied the child's hands behind him, and McDonie whipped him while he was in the hot water and held his head under the water until he strangled and bubbles arose to the surface; that defendant appeared to be no more concerned than if "it was whipping a dog, and she would smile at me;" that the child continually appealed to his mother to take him out; and that the only time Mrs. McDonie was not present was when she went after more sticks. Witness says that she afterward talked to defendant about McDonie's treatment of the child, and that defendant said she loved Joe better than she did the child. This witness had been living in the house with the McDonies about two weeks, and says that during that time Joe McDonie whipped the child brutally almost daily; and that several times defendant asked him to whip it.

Soon after the occurrence related by Mrs. Cassler, the boy's grandfather and uncle, the father and brother of the child's own father, learned of the affair and went to the McDonie home to see about the boy. Defendant told them that he was all right and had gone to bed; that he went to bed early of evenings. The uncle insisted on seeing the boy, but defendant braced herself in the stairway to prevent the two men from going up where the boy was. The uncle said that he took up the telephone, and that Mrs. McDonie jerked it out of his hand, saying: "You will get into trouble; you know Joe McDonie." Witness then went to a neighboring house and called up the chief of police. When the policemen came, defendant locked the front door and hid herself.

Defendant testified that after the boy was brought home by his uncle after midnight, Joe McDonie whipped him a

little; and the next morning she and her husband decided they would keep him in all day, to punish him for running away the night before; that they told him to go up stairs, but he was stubborn and would not go; and that she told McDonie to take him up and put him to bed. She says she did not hear any noise, but that later her husband came down and said that the water was warmer than he thought and he had burned the boy's feet, and went to the drug store for salve, and put the salve on the boy's feet and bandaged them. She denies that Mrs. Cassler was present at any time when the boy was being punished, or that he was whipped severely. She says she got some small switches and asked her husband to punish the boy for running away. Joe McDonie, then a prisoner in the state penitentiary, testified he whipped the boy the night after he ran away, and again the next morning, but that he did it in good faith, to make him mind. He says that the child was obstinate, and he did put him in the bath tub to punish him, because he saw that he was whipping him too hard. He insists that at no time did he mistreat the boy or whip him hard; and that he did not intend to burn him, and didn't think the water was hot enough to burn.

It is not necessary to detail here the extent of the child's injuries. Suffice to say that Judge RITZ, in the opinion in the Joe McDonie case, described the offense as "a very infamous crime, the like of which has not stained the criminal annals of this state." And the evidence of the boy's injuries and suffering adduced on this trial does not materially differ from that on the former case.

It is contended that the trial court erred in refusing to grant a continuance because of the physical condition of the defendant, she being enciente and nearing seven months of the period of gestation and in a nervous condition. Mrs. McDonie was examined on her application for continuance; and the trial court had opportunity to observe her condition then and throughout the trial. The trial court always has a sound discretion in the matter of continuances, and from the record we can not see that he abused such discretion in this case. The absence of two witnesses is assigned as a second ground

for continuance.    It is said that one of these witnesses
would have testified that a certain scar on the boy's lip and
nose visible at the time of the trial was the result of an ac-
cident two years before the offense alleged in the indictment.
We think this testimony would have been immaterial in view
of the evidence adduced on the trial.    Defendant was be-
ing tried for an assault alleged to have been made at a certain
time, not for permanent injuries inflicted.    The State did
not present the boy for examination by the jury: he was pre-
sented by defendant.    The other witnesses would have testi-
fied that a few days after the alleged offense she examined
the boy and found no such scars as were described by the
State's witnesses on the trial of Joe McDonie.    Defendant
introduced a number of witnesses who testified that the con-
dition of the child was not as serious as described by wit-
nesses for the State.    The evidence of this witness could
have been but cumulative.

It is said that there was no evidence of malice, and that de-
fendant having the right as parent of the child to punish and
chastise him, no malice can be inferred.    In the Joe McDonie
case we said: "The doctrine that one intends to do that
which is the natural and probable consequence of his acts
is just as applicable in a case like this as in any other sort of
a case. * * * A parent can no more commit a brutal attack
upon his child resulting in the infliction of serious injury
upon it, than he can commit such injury upon a stranger,
and when he does so, and the jury is satisfied that the pun-
ishment inflicted has resulted in such serious injury, such
fact, when found, may be treated as proof of malice upon the
part of such parent as well as of guilty intent."

The refusal of the court to give the jury certain instruc-
tions offered by defendant is assigned as error.    Instruction
number three would have told the jury that if they did not
find the defendant guilty of the offense charged in the in-
dictment, they might find her guilty of cruelty to a child.
Defendant was not charged with  violation of the statute
against cruelty to children.    Defendant's instruction number
four would have told the jury that parents act judicially in
determining the necessity of punishment and the extent to
which it should be administered, and unless the jury believed

the punishment inflicted was such as was in its nature calculated to produce lasting injury to the child, then the defendants did not exceed the limits of the power which is granted them.    In the Joe McDonie case it was held that to maim means to violently inflict a bodily injury upon a person so as to make him less able to defend himself or annoy his adversary.    It is not necessary that the injury should be lasting.    Instruction number five, not given, was predicated on the facts stated in two preceding instructions, properly refused.    Instruction number ten was properly refused because it would have told the jury that one is not presumed to intend to do more than that which actually did result from his acts.

Defendant's instruction number twelve, refused, was as follows: ''The jury are hereby instructed that if you find from the evidence that the defendant Susie McDonie is the wife of her co-defendant Joe McDonie, and that the acts charged in the indictment were done by Joe McDonie, and Susie McDonie jointly, or by Susie McDonie in the presence of her husband then the presumption is that she was acting under her husband's coercion, and if she was acting under such coercion you should find her not guilty.''

At the common law there was a presumption that when a crime was committed by the wife in the presence of her husband, she acted under compulsion.    The more heinous crimes, such as murder and treason, seem always to have been excepted from the rule, and in some jurisdictions manslaughter and robbery.    13 R. C. L. 1237-1241; 30 C. J. 792; 1 Schouler on Domestic Relations, (6th ed.) §§55-57; 1 Bishop's Criminal Law, (9th ed.) §§356-361; 1 Russell on Crimes, (7th Eng. ed.) 91-98; 4 Stephen's Laws of England, (16th ed.) 31; *Bibb* v. *State*, (Ala.) 33 A. S. R., note p. 89; *State* v. *MaFoo*, (Mo.) 33 A. S. R. 414; *State* v. *Seahorn*, 166 N. C. 373.    But almost all of the authorities cited doubt the wisdom of maintaining this rule in modern times, based as it was on the idea of the right of the husband to control his wife with the lash.    The reason for applying the rule in all its strictness no longer remains.    Mr. Bishop says the reason for excepting from the general rule the crimes of

murder, treason and robbery, is that; "These crimes are commonly deemed to show so much malignity as to render it improbable that a wife would be constrained by her husband, without the operation of her will, into their commission." The offense charged here, under all the circumstances in evidence, might perhaps be considered an exception to the general rule; but we think, in the instant case, where all the evidence as to the defendant's part in the crime alleged shows that she acted voluntarily, and there is not the slightest evidence of coercion, this instruction would not be proper, because tending to intimate to the jury that there was evidence of coercion. In the examination of numerous cases where this rule was applied, nowhere do we find instructions thereon unmodified as here offered. In every case such an instruction has been modified with more or less explanation. Many of the authorities cited say that the presumption is a weak one, and that the slightest evidence is sufficient to rebut it. Under the circumstances of this case, where neither the defendant nor her husband attempted to say that she was acting under his control or will, but on the contrary both admit that she asked the husband to whip the child, well knowing the nature and extent of punishment he was in the habit of administering, we do not see that the jury could have found a different verdict than the one returned if such instruction had been given. Such instruction might have misled them. *Angrist* v. *Burk*, 77 W. Va. 192.

The judgment will be affirmed.

*Affirmed.*