SAMUEL H. HUTCHINSON

*v.*

MONTGOMERY MEMORIAL PARK CORPORATION *et al.*

(No. 9669)

Submitted October 2, 1945.   Decided November 27, 1945.

*William L. Lee, Howard R. Klostermeyer* and *Spilman, Thomas & Battle,* for plaintiff in error.

*Mahan & White, C: B. Vickers,* and *Scherer, Bowers & File,* for defendants in error.

LOVINS, PRESIDENT:

Samuel H. Hutchinson instituted this action in the Circuit Court of Fayette County against Montgomery Memorial Park Corporation, Carl Berry, Jack Fannin,

Joe Tabit and Andrew Tabit, the persons last named being a partnership trading as T. & T. Company.

Plaintiff seeks recovery for personal injuries suffered by him as the result of a collision between two motor vehicles, which occurred on U. S. Route 60, near the village of London about eight o'clock on the night of January 21, 1943. The jury returned a verdict in the sum of fifteen thousand dollars against the Tabits and Fannin, found for the defendant, Berry, and the court directed a verdict for Memorial Park Corporation. Judgments were rendered on the verdicts. The Tabits and Fannin bring the case to this Court by writ of error.

The Tabits were engaged in the business of selling meats and groceries in the town of Montgomery, and Fannin was employed by them as a truck driver. On the day of the collision Fannin in the course of his employment drove his employer's motor truck to Charleston for the purpose of transporting merchandise from Charleston to Montgomery. While in Charleston Fannin, at the direction of his employers, had two rear lights installed on the truck, and had a defective light switch repaired. The truck was equipped with dual rear wheels, weighed approximately three thousand pounds, and at the time of the collision was carrying a load of from four to five tons. On the return trip from Charleston one of the right rear tires blew out and the weight of the loaded truck flattened the other right rear tire. Fannin stopped the truck as close as possible to the right or south side of the paved portion of the road, which at that point was approximately twenty-two feet wide, with a twenty-foot berm on the north side and a fourteen-foot berm on the south side. Fannin testified that he did not park the truck on the fourteen-foot berm because the earth appeared to be soft and muddy, and he feared that the jack used in raising the truck to remove the wheels would sink into the ground and prevent repair. Fannin telephoned his employers and informed them of his plight, and the Tabits directed W. C. Absalom, the owner of a repair garage, to go to the truck and repair

it. Absalom sent one of his employees to the place where the truck was parked, and shortly thereafter followed in his automobile. On Absalom's arrival at the place where the truck was parked, it was ascertained that the tires could not be repaired there and it was necessary to take them to Montgomery for that purpose which was done, Absalom remaining at the parked truck. While Fannin and Absalom's employee were repairing the tires a motor truck owned by the Montgomery Memorial Park Corporation, driven by Carl Berry and in which plaintiff was riding, struck the rear end of the truck parked by Fannin.

Montgomery Memorial Park Corporation operates a cemetery. Carl Berry was an employee of that corporation, his principal duties being that of digging graves and caring for the shrubbery and grass in the cemetery.

On the afternoon of the day of the accident plaintiff took to his home a half gallon of wine. Shortly after plaintiff arrived at his home, Carl Berry, came there and plaintiff, Berry and other persons in the Hutchinson home drank practically all the wine. Berry, according to his testimony, drank about three glasses. Thereafter plaintiff and Berry agreed to go to the town of Montgomery in the truck owned by the Memorial Park Corporation. It is not clearly disclosed by the record their purpose in going to Montgomery. It suffices to say that they were not going on the business of the Memorial Park Corporation, and otherwise the purpose is immaterial. The truck was in a garage belonging to the Memorial Park Corporation, to which Berry had a key, and it was loaded with one and a half tons of dirt and tools. Plaintiff and Berry entered the truck and started in an easterly direction from the village of London with Berry driving, travelling on U. S. Route 60. Plaintiff and Berry say that the truck was operated at a speed of approximately thirty miles an hour until they reached the straight portion of the road about three-tenths of a mile west of the point of the collision, when Berry in-

creased the speed of the vehicle. Plaintiff testified that he remonstrated with Berry relative to the speed of the vehicle an instant before the collision.

There is a sharp conflict of testimony as to whether lights of the truck owned by the Tabits were burning at the time of the collision, and likewise a conflict as to whether there were flares or fusees to the west of the Tabit truck. Several witnesses testified that no lights or flares were burning; others testified that the lights on the truck were burning and that a fusee or flare was burning; and another witness testified that three fusees had been successively placed west of where the Tabit truck was parked. Other witnesses say that if there were lights or flares, they did not see them.

The collision resulted in serious and permanent injuries to plaintiff. He suffered a fracture of both lower limbs, a painful injury of the scrotum, and a severe blow on his head. He was sent to a hospital and remained there for treatment for several months.

On the day following the collision a written statement was made by plaintiff's wife, which tends to show that Berry was intoxicated at the time he left plaintiff's home, a short time before the collision. Her testimony at the trial tends to show that Berry was not intoxicated. She explains the discrepancy between her written statement and her testimony by saying that at the time she signed the statement she was mentally disturbed and did not know what she was signing. Three days after the collision a member of the Department of Public Safety obtained a statement from plaintiff which tends to show that Berry, the driver of the truck, was intoxicated and that plaintiff knew Berry was intoxicated before they started to drive from plaintiff's home to Montgomery. Plaintiff testified that he did not remember signing the statement, and that, if he signed it, he was so irrational at the time that he did not know what he was doing. He is supported in such explanation by his attending physician, who testified that on account of sedatives

administered to plaintiff and the effect of the head in-jury plaintiff on January 24, 1943, was irrational and incapable of correctly stating the events leading up to the accident.

Four days after the collision, Berry, the driver, pleaded guilty to a charge of reckless driving before a justice of the peace and paid a fine and costs.

When the case was called for trial on April 26, 1944, the defendants moved for a continuance on the ground that Everett Riley, a material witness was absent. The showing in support of the motion for a continuance and in opposition thereto was made by sworn statements of counsel. The affidavit and cross-examination provided for in Code, 56-6-7, were not required by plaintiff. Counsel for plaintiff had a conversation with Riley on February 10, 1944, and again on February 21, 1944. On April 16, 1944, plaintiff procured a subpoena and had the same served on Riley. However, plaintiff stated that notwithstanding the absence of Riley, he was ready to go to trial, as the testimony of Riley was cumulative. Counsel for defendants, Memorial Park Corporation and Carl Berry, learned that Riley had knowledge of the events leading up to the collision, but were unable to locate and interview him until about six o'clock p. m. on April 19, 1944. On the same day they caused a subpoena to be served on him. Riley was in the United States Navy, stationed at Great Lakes Naval Training Sta-tion, Illinois, and on the occasion of the service of the subpoena on him he informed counsel for the Memorial Park Corporation and Berry that he expected to leave on April 20, 1944, to return to his station, but that he would return to testify at the trial. No subpoena for Riley was issued on behalf of the Tabits and Fannin, who relied on the service of the subpoena on him by their co-defendants. Riley left on the morning of April 20, 1944, to return to his station, and on April 22, 1944, counsel for Memorial Park Corporation and Berry sent him a telegram, to which there was no reply.

According to the sworn statement of counsel, defendants expected to prove by Riley that he was with plaintiff and Berry before they entered the truck and started to Montgomery; that Riley was invited to go with them in the truck; that he refused to go unless he was permitted to drive the vehicle; and that Berry having refused to permit him to drive the truck, he did not go on the trip which resulted in the collision. They also expected to prove by Riley that Berry was noticeably intoxicated, and that Riley believed it was unsafe to ride in the truck with Berry driving. The trial court overruled the motion for a continuance and required defendants to go to trial in the absence of the witness Riley, resulting in the return of the verdicts and rendition of the judgments as hereinabove stated. Defendants, Joe Tabit, Andrew Tabit, and Jack Fannin contend that it was error to overrule the motion for a continuance. Inasmuch as we dispose of this case on that contention, it is unnecessary to state or discuss the other assignments of error.

It is firmly established in this State that a motion for a continuance is addressed to the sound discretion of the trial court. *Kitson* v. *Messenger,* 126 W. Va. 60, 27 S. E. 2d 265; *State* v. *McDonie,* 96 W. Va. 219, 123 S. E. 405; *Keathley* v. *Railway Co.,* 85 W. Va. 173, 102 S. E. 244; *State v. Jones,* 84 W. Va. 85, 99 S. E. 271; *Cave* v. *Blair Limestone Co.,* 74 W. Va. 752, 82 S. E. 1095; *Coal Co.* v. *Todd,* 66 W. Va. 671, 66 S. E. 1066. But the exercise of such discretion is subject to review. *State* v. *Jones, supra.*

Where a motion for a continuance is made on the ground that a material witness is absent, it is necessary to show that the party moving for the continuance has used due diligence to procure the attendance of the witness; that the testimony of the witness is material; that the same facts cannot be proved by any other witness in attendance; that the movant cannot safely go to trial in the absence of such witness; and that there is likelihood of procuring the attendance of the witness, or his

deposition, if the case is continued. *State* v. *Jones,* *supra; Dimmey* v. *Railroad Co.,* 27 W. Va. 32; *Tompkins* v. *Burgess,* 2 W. Va. 187. In the absence of such showing, it is not error to overrule a motion for continuance.

Admittedly no subpoena was issued and served on the absent witness by the complaining defendants, but that fact alone does not show a lack of diligence on their part. *State* v. *Stout,* 116 W. Va. 398, 400, 180 S. E. 443. It is a reasonable assumption that if the Tabits and Fannin had caused a subpoena for Riley to be issued and served that it would not have been any more effective to procure his attendance than the other two subpoenas issued and served on him. The Tabits and Fannin had a right to rely on the subpoenas issued and served at the instance of their co-defendants.

From the statement of the facts expected to be established by Riley's testimony, it cannot be doubted that such testimony was material and of vital importance to the defendants. If established to the satisfaction of the jury that Berry was noticeably intoxicated when he started on the trip from London to Montgomery, it may tend to show contributory negligence on the part of plaintiff. The defendants could not safely go to trial without the testimony of the absent witness and it is shown by the sworn statement of counsel that there was likelihood of procuring the attendance of Riley, or his deposition, if the case had been continued.

The testimony of Riley was so necessary to the defendants in this action that the ruling of the court in refusing the continuance and compelling defendants to go to trial was plainly erroneous and resulted in prejudice to the Tabits and Fannin.

No evidence was adduced on the trial relative to the facts proposed to be proved by Riley. True, the plaintiff and his wife made written statements, which tended to establish the intoxication of Berry, but those statements were repudiated and their probative force was lessened, if not destroyed. No witness testified that Riley refused

to ride in the truck with plaintiff and Berry because Berry was obviously intoxicated.

This action is against five co-defendants as joint tort feasors. Should the judgments as to all be reversed, the verdicts set aside, and a new trial awarded to all defendants? These questions are not without difficulty.

At common law the reversal of the judgment as to the Tabits and Fannin would call for reversal as to the Memorial Park Corporation and Berry. *Tracy* v. *Cloyd, et al.,* 10 W. Va. 19. But subsequent decisions of this Court lay down the rule that a new trial may be granted to one defendant and denied to another. *Mason* v. *Bluefield,* 105 W. Va. 209, 141 S. E. 782; *Blevins* v. *Bailey,* 102 W. Va. 415, 419, 135 S. E. 395; *Pence* v. *Bryant,* 73 W. Va. 126, 80 S. E. 137. A judgment may be reversed in whole or in part. Code, 58-5-25. Had there been no objection to the judgment and verdicts in favor of Memorial Park Corporation and Berry, they should be allowed to stand. *Southern Ry. Co.* v. *Forgey & Richardson,* 105 Va. 599, 54 S. E. 477. But the Tabits and Fannin complain that the judgment in favor of their co-defendants, who are before this Court as defendants in error, is erroneous; that the verdict in favor of Berry is unwarranted; and that the verdict in favor of Memorial Park Corporation should not have been directed at a time so as to prejudice their defense. We express no opinion on these contentions.

This case presents a peculiar situation. We have verdicts in favor of two of five defendants and a verdict against three defendants, with judgments entered on the verdicts. And the case, as we view it, calls for reversal because of the ruling of the trial court on the motion for continuance. Hence, we do not pass on the meritorious questions presented in the record. All defendants stood on the motion for a continuance and notwithstanding that two of them were not prejudiced by the proceedings had subsequent to that motion, their joint and several liability having been alleged, we think that none of the

defendants should be discharged from liability by a trial in which material and vital testimony bearing on the question of liability, was not offered because of the absence of a witness. In order that none of the defendants be prejudiced in any of their future rights, their liability or nonliability should be determined in a trial free from prejudicial error.

We reach the conclusion that defendants were entitled to a continuance, that the failure to grant the same was plainly erroneous and was prejudicial to the rights of the complaining defendants. The foregoing calls for reversal of the judgments of the trial court, and the award of a new trial. *State* v. *Wright,* 108 W. Va. 715, 152 S. E. 743; *State* v. *Jones, supra; Doane* v. *Pulp & Lumber Co.,* 77 W. Va. 454, 87 S. E. 859.

Accordingly, the judgments of the Circuit Court of Fayette County are reversed on the sole ground that it was error to overrule the motion for a continuance, the verdicts as to all defendants are set aside; and a new trial awarded.

> *Judgments reversed; verdicts set side; new trial awarded.*