# CHARLESTON.

WEEKLY *v.* HARDESTY *et al.*

Decided April 14, 1900.

1. BILL QUIA TIMET.—*Purchaser.*
    On principles of *quia timet* chancery will entertain a bill by a vendee of land against his vendor to compel the vendor to pay out of his own land liens binding the lands of both, where the vendor is insolvent except as to his land, and that may prove inadequate security. (p. 43.)

2. APPEAL—*Record—Correction—Reversal.*
    An appeal brings up the entire record, and any error to the prejudice of an appellee not appealing or cross assigning error may be corrected or reversed, though his right do not depend on the same errors assigned by the appellant, but is even separate from or hostile to it, if justice requires such correction or reversal. (p. 44).

3. POSSESSION—*Notice to Purchaser.*

   Actual possession of land is notice to purchasers of the occupant's right to the land, though his title paper is not recorded, whether the subsequent purchaser actually knows of such occupant's right or not; but such possession is not notice to creditors of the grantor of such occupant of the rights of the occupant, whether the creditors have actual notice of his rights or not. (p. 44).

Appeal from Circuit Court, Jackson County.

Bill by William Weekly against Jemima Alice Hardesty and others. Decree for plaintiff, and defendants appeal.

*Modified.*

N. C. PRICKETT, for appellants.

WARREN MILLER, for appellee.

BRANNON, JUDGE:

Jemima Alice Hardesty, wife of R. L. Hardesty, owned a tract of land conveyed to them by Depue and others, described in the deed as containing one hundred acres, but which contained one hundred and fifty-four acres. Mrs. Hardesty and her husband sold to Mary L. McCown two parcels of eighteen acres and fifty-three acres out of the said tract of one hundred and fifty-four acres some time before the 8th of March, 1894, and McCown took actual possession of said parcels under her purchase. It is said in the answer of Hardesty that she and her husband conveyed said two parcels of land to Mrs. McCown by deed in April, 1893. By deed dated March 8, 1894, Mrs. Hardesty and her husband conveyed the said two parcels of eighteen and fifty-three acres to Weekly, he having purchased the same from McCown. When Weekly purchased of McCown, instead of taking a deed from McCown for said two parcels of land, it was arranged between the parties that the deed from Mrs. Hardesty and her husband to Mrs. McCown should be, and it was, destroyed, as Hardesty's answer states, and a deed for said two parcels was made by the Hardestys to Weekly, the deed from the Hardestys to McCown never having been recorded. It is immaterial whether it existed for this case. Weekly at once took possession under his purchase from McCown. Weekly did not record his deed from the Hardestys until April 5, 1894. On March 9, 1894, the Hardestys executed a deed of trust to secure a debt for

borrowed money to Brown, which deed of trust was recorded Marsh 12, 1894, before the record of Weekly's deed. That deed of trust covered the whole of said tract of 154 acres, thus binding the parcels which the Hardestys had sold to McCown, and McCown to Weekly, and which the Hardestys so conveyed to Weekly, and also binding the residue of said tract which remained the property of Mrs. Hardesty. On the 10th day of March, 1894, before the recordation of Weekly's deed, a judgment in favor of Armstrong against Adams and R. L. Hardesty and Jemima Alice Hardesty was docketed in the lien docket, thus creating a lien on all said land. Such being the state of facts, Weekly filed his bill in the circuit court of Jackson County against the Hardestys and others, setting up the aforesaid facts, and claiming in his bill that Brown and the trustee in his deed of trust, Pickett, had notice, when said deed of trust was made, of the prior purchase by McCown of said parcels of eighteen and fifty-three acres, and also notice of Weekly's purchase of the same; and that, at any rate, when said deed of trust was taken, McCown was, and long had been, in actual possession of said parcels of land; and claiming that the deed of trust debt had been paid off, and should be released; and claiming that the Hardestys had made the same with the intention to cheat and injure Weekly, after they had conveyed said two parcels to him, by binding them in said deed of trust. The bill prayed that said Brown and Prickett and the Hardestys discover what information Brown or his trustee had of the purchase by Weekly of said land when said deed of trust was made. The bill prayed that Brown be compelled to release said deed of trust as to said two parcels of land owned by Weekly. The bill claimed also that the judgment of Armstrong had been paid off. It claimed that these facts and the acts of the parties constituted a cloud over Weekly's title, and prayed that the same be removed, and appealed to the jurisdiction of equity to do so. Thus the bill of Weekly sought the complete exoneration of his land from said Brown's deed of trust and Armstrong's judgment. But if this full relief could not be granted, the bill prayed that, as the Hardestys were utterly insolvent, except as to the residue of the tract yet owned by Mrs. Hardesty, and as Weekly's land was in danger from said debts increasing in time, that Mrs. Hardesty be compelled to pay said debts out of that part of the said tract yet owned by her in exoneration and relief of the parcels which

she had sold to McCown, and which McCown had sold to Weekly, and which had been conveyed by the Hardestys to Weekly. The case resulted in a decree holding the whole tract liable for the Armstrong judgment and the brown deed of trust, and subjecting the whole tract to sale, but directing the sale first of that. part of the tract yet owned by Mrs. Hardesty. From said decree Mrs. Hardesty and her husband appealed.

I see no colorable ground on which the Hardestys can sustain an appeal. They are not aggrieved. In their answer they admit that Brown's debt is just, and unpaid, and actually consent to the land yet owned by Mrs. Hardesty being subjected to it. They pretend that they did not intend by the deed of trust to Brown to bind the land which had been sold by them to McCown and by McCown to Weekly, saying that they only intended to convey the residue to secure Brown, whereas they must have known that the deed of trust covered the whole land. Their conduct is disingenuous and inconsistent, and causes a court of equity to look with disfavor upon them. They sell a part of the tract to McCown, and at McCown's request convey it to Weekly, and the very next day turn around and borrow money of Brown, and subject the land they had conveyel to Weekly to the payment of Brown's debt. Then they came into court pretending that they intended to subject to the deed of trust of Brown only the residue of the land still owned by Mrs. Hardesty, and consenting that it be subjected thereto. And when the court subjects it in the first instance to pay their honest debts, they come to this Court complaining of a decree which is really a consent decree on their part. That would alone forbid any reversal at their hands. They admitted in their answer that Armstrong's judgment was just, claiming only a payment of one hundred dollars on it, which Armstrong admitted. How can they complain of a decree for this admitted debt? How can the Hardestys object to having the land yet owned by Mrs. Hardesty go to pay her just debts to the relief of Weekly's land, which they had long before sold, and got the money for? Even if equity did not require that Mrs. Hardesty's land first answer for her debts to save Weekly's land, their own answer consenting thereto would effectually bar any complaint against the decree. If there were any technical grounds of complaint against the decree, their answer on the merits would forbid any complaint by them against the decree.

One error which the Hardesty's assign is that the demurrer should have been sustained. There is clear equity for the bill on several grounds: First, on the theory of cloud over title; second, to declare the deed of trust void, and compel its release, on the ground that it was taken with actual notice of Weekly's rights, or, if not that, then on account of notice arising from actual possession of the land by McCown or Weekly; and, thirdly, there is plain jurisdiction in equity on the principle of *quia timet,* giving right to Weekly to call upon the Hardestys to exonerate his land from the said incumbrances, because of the fact that they had sold the land owned by Weekly to McCown, and should out of the land yet owned by Mrs. Hardesty pay the debts, simply because it is an ordinary rule of equity that a debtor must pay a lien out of his own land before land which he has sold away can be taken.

Then the point is made that Mrs. McCown should be a party. That is not material to the Hardestys. Their land must be first sold before the McCown land is reached. What interest had they in the McCown land? None. If Weekly chooses to rest on his alleged deed from the Hardestys, or run the risk of having the title remain in McCown that was vested in her by the deed from Hardestys to her, alleged to have been destroyed, that is Weekly's self-assumed risk, and does not concern the Hardestys. Moreover, there is no proof that such deed was made by the Hardestys, as their answer is no evidence of it. If Weekly were to complain that his land had been decreed to sale with the legal title outstanding in McCown, thus tending to produce sacrifice, we could see some ground in his complaint; but he does not complain on that score. If the Weekly land had been decreed to sale first, the Hardestys might complain of the danger of sacrifice of a sale in absence of the legal title; but the decree sells Hardesty's land first. The absence of Adams, a judgment debtor in the Armstrong judgment, is not a subject of complaint by the Hardestys on the theory that he might show payment of the judgment, because the answer of the Hardestys admits the judgment unpaid. That is not an issue in the case. It is said that Armstrong should have been a party. He came in by a petition and answer, and thus bound himself by submitting himself to the jurisdiction of the court, and his judgment was set up in the bill. He is effectually bound by the decree. But how can the Hardestys complain that his judgment is decreed, when it is decreed

only as they confess it to be in their answer? There is nothing in the point that there is no reference to ascertain liens. This is not a lien creditors' suit. It is a suit to compel an exoneration of Weekly's land. There is no claim that there are any other liens on the land than those specifically designated in the bill. Thus it is manifest that the Hardestys have no ground on which to reverse the decree.

There is, however, error in the decree to the prejudice of Weekly. It is true he does not appeal, but in his bill he contested the liability of his land to the Brown deed of trust, and in *Morgan* v. *Railroad Co.,* 39 W. Va. 17, (19 S. E. 588); this Court held that a writ of error by one party brings up the entire record, and if any error exists to the prejudice of an appellee, it may be corrected, though his interest be not identical with the appellant's interest, but hostile thereto; and in *Anderson* v. *Snyder,* 21 W. Va. 632, it is likewise held that the Court will consider the whole record, and review the proceedings in whole or part in the same manner as it would were the appellee to bring an appeal. The error against Weekly lies in the fact that his land is subjected to Brown's deed of trust. Long before that deed of trust, the Hardestys had sold to McCown, and the latter had long been in actual possession. So the bill charges without denial. The bill charges, also, that when Weekly took his deed from the Hardestys, Weekly "at once" took actual possession. So either McCown or Weekly was in actual possession when Brown's deed of trust was made. No matter which was in possession. If McCown was, Weekly, as her alienee, is entitled to the benefit of that possession. That possession is notice to the world of the right of the party in possession, because actual possession is just as much notice to purchasers as a recorded deed, as shown at large in *Ellison* v. *Torpin,* 44 W. Va. 436, (30 S. E. 183), where the authorities are collected. If the Hardestys had made a deed to McCown, though it was not recorded, McCown's possession was notice to Brown of rights under it. Though Weekly's deed was not recorded, his possession under McCown was notice to Brown protecting Weekly's rights derived from McCown. But such possession was not notice to the judgment creditor Armstrong, because he is a creditor, whose right is paramount to that of any purchaser, whether the creditor have notice of the purchase or not, unless the purchase is recorded. *Delaplain* v. *Wilkinson,* 17 W. Va. 244 (syl., point 2). Therefore the decree will be

modified so as to entirely exempt from Brown's deed of trust the two tracts of land conveyed by Jemima Alice Hardesty and R. L. Hardesty to William Weekly, Sr., by the deed dated the 8th of March, 1894, and in all other respects the decree is affirmed.

*Modified.*