# CHARLESTON.

P. T. MASON *v.* CITY OF BLUEFIELD *et al.*

(Nos. 5990, 5990-A)

Submitted February 7, 1928. Decided February 14, 1928.

1.  MUNICIPAL CORPORATIONS—*City Raising Street Grade, Causing Surface Water to be Cast in Mass on Adjoining Land, is Liable.*

    A city is liable in damages to a property owner in collecting surface water and casting it in a mass or body on his land by raising the grade of an adjoining street.   (p. 211.)

    (Municipal Corporations, 43 C. J. § 1905.)

2.  SAME—*City Requiring Street Railway to Raise Part of Street to Grade is Liable to Abutting Property Owner, Although Remainder Has Not Been Raised.*

    Where a street railway company, at the direction of the city, raises the part of the street occupied by its railway to a grade established by the city, authorized to require such action, the city will be liable in damages to an adjoining property owner injured thereby, although it has not yet raised the remaining part of the street to such grade.   (p. 213.)

    (Municipal Corporations, 28 Cyc. p. 1072.)

3.  SAME—*Raise of Street Grade Subjecting Property to Occasional Submergence Gives Right of Action for Temporary, Not Permanent, Damages.*

    Injury to real property caused by the act of a city in collecting surface water and casting the same in a body upon the premises by raising the grade of a street, so as to subject such property to occasional and intermittent submergence, gives right fo action for temporary, not permanent damages.   (p. 213.)

    Municipal Corporations, 43 C. J. § 2070.)

4.  EMINENT DOMAIN—*Street Railway Raising Track to Grade Established by City is Not in Absence of Negligence, Liable for Injury to Property Owner (Const. art. 3, § 9).*

    A street railway company which raises the part of the street occupied by its railway to a grade established by the city, at the direction of the latetr, authorized to require such action, will not, in the absence of negligence on its part, be

liable in damages for injury to an adjoining property owner occasioned thereby. (p. 214.)

(Eminent Domain, ,20 C. J. § 154.)

5. . APPEAL AND ERROR—*Appellate Court May Affirm Joint Judgment for Injury Through One Act as to One Joint Tortfeasor, and Reverse it as to Other.*

Where an action has been brought against two persons or corporations for a single act constituting a tort, this court may affirm a joint judgment against both as to one of them and reverse it as to the other. (p. 215.)

(Appeal and Error, 4 C. J. § 3218.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Error to Circuit Court, Mercer County.

Action by P. T. Mason against the City of Bluefield and the Princeton Power Company. Judgment for plaintiff, and defendants bring error.

> *Judgment affirmed as against the City. As to defendant Princeton Power Company, judgment reversed; verdict set aside; new trial awarded.*

*Wm. E. Ross,* for plaintiff in error City of Bluefield.

· *H. E. De Jarnette,* for plaintiff in error Princeton Power Co.

*James S. Kahle, A. J. Lubliner* and *John Kee,* for defendant in error.

MILLER, PRESIDENT:

From a judgment against them jointly for $1,100.00 the defendants, the City of Bluefield and the Princeton Power Company, have prosecuted separate writs of error in this Court.

Plaintiff's action was for damages alleged to have accrued to him by the act of the power company in elevating its street car line on Princeton Avenue by direction of the city and on a grade designated by the latter, which collected waters coming into said avenue from other connecting streets and threw the same upon his property, to his injury. Plaintiff's house and lot are located on the south side of Princeton Avenue, along and on the north side of which. street the defendant power company maintained and operated its street

car line.  A few months before the time of the injury com-
plained of, the city began plans to pave Princeton Avenue
by placing thereon a seven inch slab of concrete, and directed
the power company to raise its track to the level established
by the city engineer.  At the time of the injury complained
of, the power company had completed the raising of its car
line on a strip of concrete laid by it, in front of plaintiff's
lot, but the city had not commenced to lay concrete on the
remainder of the street.

It is contended that the flood was an unusual and unprece-
dented one, an act of God, which neither of the defendants
were chargeable with providing against.  Witnesses for both
plaintiff and defendants testified that they had seen in the
same community as great or greater storms or floods in recent
years.  The character of the evidence was such as to present
this question of fact to the jury.

Error is assigned in the refusal of the trial court to set
aside the verdict of the jury as being excessive and not sup- ·
ported by the evidence.  The testimony of the plaintiff, his
wife, a plasterer and a carpenter, as to the goods destroyed,
and as to the amount of money expended and necessary to
put the building in repair, show items amounting to several
hundred dollars more than the verdict.  It is not pointed out
in what particulars any of these items are incorrect, and we
cannot say they are excessive.

It is argued that the city is not liable for damages, because
the water thrown upon plaintiff's premises was only surface
water.  For this proposition counsel rely on the case of
*Jordan* v. *City of Benwood,* 42 W. Va. 312.  That case holds
that a city is not liable because a change of grade increases
the quantity of water cast upon a lot, if not cast in a mass or
body upon the premises, but it further holds, point three of
the syllabus, that: "A city can not by ditches, drains or other
artificial channels collect surface water, and cast it in a
body or mass upon the lot.  If it does so, it is liable to the
lot owner in damages."  See also, *Gillison* v. *City of Charles-
ton,* 16 W. Va. 302; *McHenry* v. *City of Parkersburg,* 66 W.
Va. 532.  Here the evidence proves that the greater part of
the water cast upon plaintiff's premises doing the injury com-

plained of came into Princeton Avenue from other streets, not only draining land above plaintiff's property, from which the natural flow of waters would have come upon his lot, but also draining other lands from which the natural flow would have gone elsewhere.  Previous to the raising of the grade of Princeton Avenue the surplus water not carried off by the catch basins and storm sewers ran across the avenue and down from the north side thereof.  There is evidence that the catch basins and storm sewers under Princeton Avenue and one of the streets above plaintiff's property were not sufficient at all times to carry off the surface water coming on to them, and that at such times the surplus water escaped over the surface of Princeton Avenue.  There seems to be no question that the bulk of the water cast upon plaintiff's lot on the occasion of the injury came from the streets above and intersecting with Princeton Avenue.

Defendants contend that the trial court erred in refusing to give to the jury their instruction No. 1, that "it was the duty of the plaintiff to remove such goods from his basement, as might have been removed, by the exercise of reasonable diligence, before being seriously damaged by virtue of the act complained of" etc.  The rain causing the sudden rise of waters began about eleven o'clock at night, and before plaintiff was aware of the fact, his basement was flooded to the depth of about five feet.  It is contended that he was negligent in not immediately removing from the water what of the goods injured could have been carried out, in an effort to mitigate damages.  The articles injured in the main consisted of fruits and vegetables canned and preserved, some of which were in jars covered with cloth, some window shades and rugs temporarily stored there while the remainder of the house was being papered and painted, and a supply of fuel coal.  Damages were also claimed for injury to a furnace, and the walls and foundation of the house.  Mrs. Mason testified that she did remove and use such of the canned fruits as were not injured.  The court instructed the jury that it was the duty of the plaintiff to save as much of the property as possible in order to minimize damages, and that if they found from the evidence that he failed to exercise reasonable

care in trying to do so, the jury should take that question into consideration in minimizing the damages in the case. It does not clearly appear what plaintiff could have done in the way of removing from five feet of water in a basement any of the property in time to save it from injury. It does appear that it was several days before the water ran or seeped out of the basement, but plaintiff testified that there was no other way to remove it except to carry it out in buckets.

The city claims that since the power company constructed the concrete slab alleged to have caused the injury, it alone should be held to damages. The evidence does not show by what authority the city directed the power company to lay a part of the street surface, but it is admitted that such directions were given, and that the grade established by the city was followed. The work was done at the direction of the city, for its benefit, not that of the power company. When completed, the concrete strip became a part of the city's street. And unless the sole negligence of the power company caused the injury, the city would not be relieved, if then. The evidence shows that on top of the concrete, to protect it from traffic until it had hardened, the power company placed somewhere near plaintiff's lot some sort of wooden structure about two inches in thickness, but it is not made clearly to appear that this contributed to the injury. The concrete itself was high enough above the level of plaintiff's basement window to cause the water to enter there, and that was laid under the direction of the city, on a grade established by it or its engineer. This case in this respect is different from that of *Jordan* v. *City of Benwood, supra,* for there the change in grade was made by the street railway company under authority granted by the city, ''a mere license,'' as expressed in the opinion in that case.

It is said that the case was tried on an erroneous theory, and that the measure of damages should have been the difference between the value of the property before and after the injury. This rule applies where the action is for permanent damages to the property due to the grading or changing of grade of an adjoining street. But here the rule laid down in *McHenry* v. *City of Parkersburg, supra,* must be applied,

'that: ''Injury to real property, caused by a city, in the collection of surface water and casting the same upon the premises, by means of the grading and sewering of its streets, so · as to subject the same to occasional and intermittent submergence, gives right to recover temporary, not permanent, damages.'' *Rogers* v. *Boom and Driving Co.*, 39 W. Va. 272; *Henry* v. *Railroad Co.*, 40 W. Va. 234; *Pickens* v. *Boom and Lumber Co.*, 66 W. Va. 10.

The power company tendered and was permitted to file its special plea, alleging that it was its duty to comply with the order of the city in raising the part of the street laid by it on the grade established by the city; and issue was joined on this plea. This defendant offered an instruction to the jury to find for it, which was rejected by the trial court. The court, however, on its own motion, over the objection of both defendants, instructed the jury that ''if they should believe from the evidence that the raising of the track of the Princeton Power Company caused the water to be diverted from its natural flow over the street on to the property of the plaintiff, thereby causing the injury complained of, then they should find for the plaintiff against *both* of the defendants,'' etc.

We are of opinion that the court erred in refusing the peremptory instruction offered, and in giving its own instruction, objected to. It is clear that the power company was only complying with the order of the city, and raising a part of the street grade for the municipality, for the use and benefit of the latter, an obligation assumed as a part of the consideration of its franchise. No negligent act is alleged in the declaration on the part of either defendant. It is charged that the said defendants, not regarding their duty in the premises, without the consent of the plaintiff, by the use of certain material named, constructed in front of and contiguous to plaintiff's lot a cement and concrete pavement and street railway track, by reason of which the injury complained of was caused. Plaintiff evidently relied upon right to damages under section 9 of article 3 of the state constitution. *Jordan* v. *City of Benwood, supra.*

We are asked to enter a judgment *non obstante verdicto,* in favor of the Princeton Power Company, and to dismiss the action as to it. Issue was joined on its special plea. We find in the record no motion before the trial court, made after verdict, except the joint motion of both defendants, to set aside the verdict and grant them a new trial.

By authority of *Pence* v. *Bryant,* 73 W. Va. 126, and *Blevins* v. *Bailey,* 102 W. Va. 415, we may in a proper case reverse a judgment as to one tort feasor and affirm it as to the other defendant.

Finding no error in the record prejudicial to the defendant City of Bluefield, the judgment as to it will be affirmed; and because of the error in refusing to direct a verdict for the Princeton Power Company, and in instructing the jury that both defendant were guilty, if either, the judgment as to the power company must be reversed, the verdict against it set aside, and a new trial awarded it.

*Judgment reversed; verdict set aside; new trial awarded.*