HERBERT MILLER *v*. DANA DOUGLAS, *et als.*

(No. 8878)

HERBERT MILLER *v*. DANA DOUGLAS, *et als.*, B. F.
WHITESCARVER, *Trading, etc.*

(No. 8880)

Submitted October 4, 1939. Decided November 21, 1939.

*Waugh & Waugh,* for plaintiff in error T. A. Darnall.

*Myron B. Hymes* and *Steptoe & Johnson* and *Oscar J. Andre,* for plaintiff in error B. F. Whitescarver.

*Lycurgus Hyre* and *A. Jerome Dailey,* for defendant in error.

Fox, President:

Herbert Miller, plaintiff below and defendant in error in this court, suffered serious injuries on January 29, 1937, when he was struck by an automobile driven by Dana Douglas. He instituted his suit in the circuit court of Upshur County, seeking recovery for said injuries from Dana Douglas, driver of the automobile which struck him, T. A. Darnall, the owner of said automobile, doing business under the name of Eck Darnall Garage, and B. F. Whitescarver, doing business in the name of Whitescarver Funeral Home, and on trial of the action the jury found a verdict in his favor against all of the defendants for the sum of $5,183.33, on which judgment was entered by the trial court. Various motions were made by counsel for the defendants, Darnall and Whitescarver, during the trial of the case, and exceptions duly taken to such motions as were overruled, and there were separate motions by the plaintiffs in error to set aside the verdict of the jury, which were overruled. The defendants, Darnall and Whitescarver, applied for and secured separate writs of error to the said judgment, which were heard together in this court by reason of the fact that the claims against the said two defendants grew out of the identical accident and injury mentioned above. The said judgment, as against the defendant, Dana Douglas, has not been attacked.

Miller would sustain his judgment as against Darnall on the ground that Darnall was the owner of the automobile driven by Douglas, and that the accident causing his injury was in part due to defective brakes on said automobile; that at the time of the accident, Douglas was operating the automobile under authority given him therefor by one McCauley, an employee of Darnall and his alleged agent. The claim for recovery against Darnall is somewhat vague as to the basis on which it is sought. One theory seems to be that Darnall, through his employee and agent, McCauley, was the bailor of the said automobile; the other that the automobile was being driven by Douglas with the idea of testing the same in contemplation of its purchase from Darnall, who was a dealer in automobiles, and was therefore used in furtherance of Darnall's business.

Recovery against Whitescarver is sought on the allegation that he was negligent in ordering Miller to stop the hearse at the point of the accident and directing him to there put chains on the hearse preparatory to travelling over a muddy road, thereby placing the employee, Miller, in a place unsafe for work within the knowledge of Whitescarver, and where he was injured shortly afterward by the concurring negligence of the other defendants.

There is little dispute as to the facts of the case. Whitescarver operated an undertaking establishment in Buckhannon. On the day before the injury, the plaintiff, Miller, had driven Whitescarver's hearse from Buckhannon along Route 20 to Rock Cave in Upshur County, a distance of about sixteen miles, and from that point for a short distance on Route 35, which at that time was a stone base road, and then over a dirt road for two and one-half miles, transporting the body of a deceased girl to her home, preparatory to her funeral on the day following. On this occasion, he stopped near the intersection of Route 20 and Route 35 at Rock Cave, on the stone base road, and put on chains, and witness Rundio, who was with him on that occasion, says that Miller said, in effect, that he

would not select such a place in the future to put on chains. On the next day, Whitescarver, Rundio and Miller left Buckhannon and drove the hearse on Route 20 to a point about two hundred and fifty feet north of the intersection of Routes 20 and 35 at Rock Cave, at which point the hearse was stopped for the purpose of putting on chains. There is a conflict of testimony as to the circumstances under which the hearse was stopped. Miller, who was driving, says that it was stopped at the direction of Whitescarver, the owner; while both Whitescarver and Rundio say that Miller stopped the car without any direction from either of them. Miller and Rundio alighted from the hearse, and Miller proceeded to put the chains on the vehicle, while Rundio crossed the highway for the purpose, he says, of looking out for and directing traffic. The hearse was stopped on the right side of the paved portion of the highway, the right wheels being within about six inches of the outer edge, leaving more than one-half of the pavement available for passing traffic. At the point where the hearse was stopped, there was a view of some five hundred feet back in the direction of Buckhannon; a view of some four hundred feet along Route 20 in the direction of Webster Springs; and a view of from one thousand to fifteen hundred feet along Route 20 and Route 35 which was then the stone base road. Miller continued with his work, and shortly before his injury was facing south, or in the direction of Webster Springs, working at the left rear wheel, and while in that position saw a car coming from that direction, and at the same time the car owned by Darnall and driven by Douglas was approaching from the north, or from Buckhannon. Rundio saw these two cars approaching and apparently feared for Miller's safety and warned him, at which Miller undertook to escape from danger, and in doing so, went around the rear end of the hearse, endeavored to pass over the berm at the right of the road and was struck by the car driven by Douglas. Douglas saw the hearse parked on the side of the paved portion of the road, and when within about three hundred and fifty feet thereof, saw

the automobile approaching from the south, whereupon he attempted to apply his brakes and discovered that they would not take hold, with the result that he could not stop the automobile, and in an effort to escape striking the on-coming automobile or the rear end of the hearse, he veered to the right and struck Miller. Douglas says that had his brakes been effective, he could have stopped the automobile and avoided the accident. An examination of the automobile, by a state policeman shortly after the accident, revealed that the foot brake pedal "just dropped down to the floor board without any pressure on it at all", and that there was no emergency or hand brake. It appears to be very clear that but for the defective brakes on the automobile driven by Douglas, the accident would not have occurred.

Unless we hold, as a matter of law, that, under the circumstances shown by the record, it was negligence on the part of Whitescarver to direct or permit the parking of his hearse on the right side of the paved portion of Route 20, there can be no recovery against him in this action. While our statute, Code, 17-8-2, provides "All vehicles not in motion shall be placed with their sides as near the right hand side of the highway as practicable, except on city streets where traffic is obliged to move in one direction only", it, in our opinion, falls short of prohibiting the stopping of motor vehicles on a highway in all cases. True, of course, if the driver of an automobile stops the same on the traveled portion of a highway at the end of a curve or under circumstances which would require precautions to prevent accident and, failing to take such precautions, injures persons using the highway, he would be negligent; but we do not think this is a case of that character. The hearse owned by Whitescarver was stopped at a point on the road where there was ample opportunity for all approaching traffic to observe the same in time to avoid striking it, and at a point where there was opportunity to observe approaching traffic in all directions, and of this there can be no question as applied to the road coming from Buckhannon, because, as

stated above, Douglas admits that he could have stopped his automobile after he saw the hearse and the automobile approaching from the south, had his brakes been working. The following authorities sustain the view that Whitescarver is not liable. *Schachet* v. *Quick,* 178 Wis. 330, 190 N. W. 87, 25 A. L. R. 130; *Long* v. *Steffen,* 194 Wis. 179, 215 N. W. 892, 61 A. L. R. 1155; *Humes* v. *Schaller,* 39 R. I. 519, 99 Atl. 55, L. R. A. 1917B, 316; *Cothran* v. *Benj. Cleenewerck & Sons,* 235 Mich. 351, 209 N. W. 132. Another theory, strongly persuasive, is that if the stopping of the car had taken place under circumstances making it a negligent act, such act could not, under the facts of this case, be held to be the proximate cause of plaintiff's injury. See *Southern Pacific Co.* v. *Ralston,* 62 Fed. (2d) 1026; *Hubbard* v. *Murray, Admr.* (Va.), 3 S. E. (2d) 397 (recently decided); *Pratt* v. *Miles,* 166 Va. 478, 186 S. E. 27; *Wyatt* v. *C. & P. Tel. Co.,* 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386. We think the admitted facts in this case show that the condition of the brakes on the automobile driven by Douglas was the proximate cause of plaintiff's injury, and that this is not a case calling for the application of the doctrine of concurrent negligence. Concurrent negligence, as we understand it, is made up of acts of two or more people, all of which contribute in greater or lesser degree to the accident, and, to justify a recovery, the acts of all combined must be the proximate cause of any injuries sustained. On this phase of the case, we are of the opinion that the motion made in the trial on the part of Whitescarver to direct a verdict in his favor should have been sustained.

Whether or not Darnall can be held liable in this case depends upon the authority vested in his employee, McCauley, to grant permission for the use of the automobile driven by Douglas which struck the plaintiff and caused his injury. McCauley had been employed by Darnall over a period of seven or eight years. The evidence shows that this employment was not continuous, and an attempt is made to show that his authority, in connection with Darnall's business, was not at all times the same. McCauley

not only gave Douglas permission to drive this automobile on the day of the accident, but furnished what is known as a permit for the use of dealer's license plates to which he signed the name of Darnall, and without which Douglas would not have been permitted to operate the automobile on the public highway equipped with such plates. McCauley says he did not have authority to grant these permits except in cases where he was a long distance away from Darnall's place of business, in which case he had, on occasion, signed such permits. He also says that he requested Douglas to drive an automobile in the funeral procession when they were together the night before the accident, and that he was attempting to sell the automobile to Douglas, who stated that "he would take the car and try it out and if it was what he thought it ought to be we would trade on it." Douglas, however, says that McCauley directed him to drive this car to the funeral and, when asked whether McCauley was trying to sell him that automobile, testified, "Not that particular car, no sir. He and I were talking a trade on several different automobiles in the Darnall garage." Darnall denied any knowledge of McCauley's having granted Douglas permission to drive this automobile on the day of the accident; denied the authority of McCauley to grant such permission; and stated that in his absence, his wife was in charge of his garage. It appears that Darnall lived in an apartment over the garage. It is clear from all the testimony that neither Darnall nor his wife knew that Douglas had the automobile until after plaintiff's injury. Another pertinent item of testimony is that when Douglas went to the Darnall garage, on the morning of the accident, and inquired about the automobile he was to drive to the funeral, after a delay of some one and a half or two hours this particular automobile was brought down from an upper floor, and he testified that it was stated by McCauley to him "they're taking the brakes up on it now", and that he saw the car pulled up by a hoisting machine and a mechanic lying under it. Douglas then took the automobile to the basement and put tires from

another automobile of the same make on the rear wheels under the instructions of McCauley. This testimony may be of importance if it should be held that Darnall, through his agent, McCauley, was the bailor of the car, in which event, if the bailment was gratuitous, the ruling of this court in *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368, would seem to require knowledge of the defective brakes on the part of the bailor to make him liable therefor. We think a different rule, the rule of reasonable care, would apply if it should be held that the automobile was being driven by Douglas under the authority of Darnall's agent in furtherance of Darnall's business, such as testing the car in anticipation of its purchase, if it proved satisfactory. We are of the opinion that the testimony bearing upon the agency of McCauley was sufficient to warrant the submission of this question to the jury, under proper instructions, on the theory that the automobile was being used in and about Darnall's business. On the theory of Darnall's being a gratuitous bailor, and if there was a bailment it was according to the record gratuitous, there is no testimony as to the knowledge of Darnall or his agent that the brakes on this car were defective, and the court would not have been warranted in submitting the case to the jury on that theory.

Both Whitescarver and Darnall complain that the instructions offered by the plaintiff ignore the requirement that to make one liable for a negligent act, such act must be the proximate cause of the injury complained of. They object particularly to instruction No. 1 which correctly states the law that where there is concurrent negligence on the part of two or more people, they are all jointly liable and that the jury need not inquire as to the relative degree of negligence. But the instruction fails to state that the jury must find that the negligence complained of must be shown to be the proximate cause of the plaintiff's injury. It is so well established by our decisions that "negligence, no matter of what it consists, cannot create a cause of action unless it is the proximate cause of the injury complained of" (7 Michie's Digest Virginia & West

Va. Reports 653), that we do not think further citation of authority is necessary. Whatever the acts of negligence complained of, and by whomever committed, and what ever degree of blame, great or small, attached to any of the participants, the defendants were entitled to have it stated that any negligence relied on for recovery must be shown to be the proximate cause of the injury, in any instruction given thereon, and this we think plaintiff's instructions failed to do.

In view of our holding that the trial court should have sustained the motion of Whitescarver to direct a verdict in his favor, we do not think instructions on the theory of concurrent negligence, binding on all the defendants, should have been given. If, as we have held, Whitescarver was not guilty of any negligence, then, of course, there could have been no concurrent negligence between him and either Darnall or Douglas. It is doubtful whether there can be concurrent negligence as between a master and servant, or a principal and agent. Ordinarily, they are considered as one. The master and principal is liable for the acts of his servant or agent because such acts are considered as those of the master or principal. The giving of an all inclusive instruction on the theory of concurrent negligence convinces us that the verdict cannot be upheld as to either of the plaintiffs in error for the reason that we cannot undertake to gauge the weight which the alleged negligence of Whitescarver, concurring with the alleged negligence on the part of Darnall and Douglas, and the instructions given with relation to concurrent negligence, had in causing the jury to find against Darnall.

The verdict in favor of the plaintiff as against the defendants, Whitescarver and Darnall, and the judgment based thereon, is set aside, and the action remanded to the circuit court of Upshur County for further proceedings.

*Reversed and remanded.*