ESTHER S. LEVINE

*v.*

HOMER RAYMOND HEADLEE, JR., *et al.*

(No. 12221)

Submitted January 28, 1964.       Decided March 3, 1964.

*Wilson & Frame, Minter L. Wilson, Clark B. Frame,* for appellant.

*Oakley J. Hopkins,* for appellee.

CALHOUN, JUDGE:

In a civil action to recover damages for personal injuries and property damage resulting from an automobile collision, Esther S. Levine, the plaintiff, obtained judgment on a jury verdict for $10,000 in the Circuit Court of Monongalia County against Homer R. Headlee, Jr., and Grant Allen Yates, the defendants. The case is before this Court upon an appeal granted on the petition of Headlee. Yates has not appealed from the judgment of the circuit court.

The questions presented for decision involve the sufficiency of the evidence relating to the identity of Headlee as the driver of an automobile involved in the accident; two instructions given for the plaintiff; and an instruction read to the jury by the court on its own motion.

The accident occurred about 7:30 a. m., on Thursday, August 17, 1961, while the plaintiff was proceeding on State Route 73 from her home in Morgantown to the place of her employment as a medical technician in the office of a physician in Fairmont. All witnesses agree that there was a heavy fog at the time and place of the accident and that consequently lights were being used on motor vehicles which were on the highway in that area.

Immediately before the accident, the plaintiff was proceeding in a line of motor vehicles up a slight grade on the two-lane highway about five miles outside of Morgantown. The front vehicle was a truck loaded with crushed limestone, the truck being operated by William Phillips. To the rear of that truck was a pickup truck operated by Max Armstrong in which a nineteen-year old boy named Hobert Kenneth Benson was a passenger. They were traveling from their respective homes in Preston County to their place of employment in Fairmont. Benson later became the chief witness for the plaintiff on the question of the identity of defendant Headlee. At the time of the trial, Armstrong was in Washington, D. C., and therefore did not appear as a witness. Behind the Armstrong pickup truck was a line of automobiles which included a 1961 model red Buick with a white top and the Volkswagen which was being operated by the plaintiff.

The Buick proceeded out of the line of traffic and continued in the left lane in an effort of its driver to pass other vehicles ahead. After the Buick had passed the Armstrong pickup truck and when it reached a point to the left of the Phillips truck, a 1953 Cadillac automobile operated by defendant Yates approached from the opposite direction. In these circumstances, defendant Yates applied his brakes and drove his Cadillac to his right, off

the pavement and onto the unpaved berm, in order to avoid a head-on collision with the Buick. In doing so, and in an effort to return to the paved portion of the highway, Yates lost control of his Cadillac with the result that it proceeded across the highway to its left and struck the plaintiff's Volkswagen. The Volkswagen was demolished and the plaintiff suffered quite severe personal injuries. Her civil action, therefore, is to recover for the damage to her automobile, as well as for her personal injuries.

The Buick did not stop at the scene of the accident but proceeded on its course of travel toward Fairmont. By its verdict, the jury necessarily found that the evidence was sufficient to identify defendant Headlee as the driver of the Buick automobile. Counsel for the appellant earnestly urge that the pertinent evidence, consisting primarily of the testimony of Benson, is not sufficient to support that factual finding by the jury. This calls for a review of the testimony bearing upon that question.

Sergeant Walter B. Snodgrass, a state policeman, arrived at the scene of the accident at approximately 8:30 a. m. He interviewed Armstrong, the driver of the pickup truck, who reported that the unidentified automobile was a 1961 model red and white Buick. Benson was present meantime and verified the information given by Armstrong. On the evening of Friday, August 18, 1961, the day following the date of the accident, Benson went to state police headquarters at Morgantown and reported to Sergeant Snodgrass that he had that day seen the same Buick automobile at or near the City of Fairmont, and that it bore a Pennsylvania license. No investigative action was taken by Sergeant Snodgrass on the basis of the report thus made to him by Benson.

Defendant Headlee appeared at the office of counsel for the plaintiff in Morgantown about a month after the accident in response to a letter written by the attorney to Headlee. The attorney apprised Headlee of the fact that he was accused of being the driver of a red Buick automobile bearing a Pennsylvania license which had been involved in the accident. Headlee denied having

been involved in the accident, but did not state then, as he later did at the trial, that he drove a truck rather than his Buick on the day in question from his home near Morgantown to his place of employment at Fairmont.

At the trial, Benson testified that on the day in question he rode with Max Armstrong in the pickup truck down High Street in Morgantown en route to Fairmont; that, as they approached and passed the point where Foundry Street intersects or enters High Street, he saw a red and white Buick which was standing on Foundry Street at the point of intersection; that the Buick thereafter proceeded into High Street and followed the Armstrong pickup truck on its course of travel toward Fairmont; that the driver of the Buick was wearing a cap; that the Buick was immediately behind the Armstrong pickup truck before the occurrence of the accident; and that the Buick proceeded to pass the Armstrong pickup truck and the Phillips truck, thereby precipitating the collision as has been stated earlier in this opinion. Benson testified further that when he and Armstrong were on their way to work the next day, they saw the same Buick at a gas station near Fairmont; that it bore a Pennsylvania license and that standing beside the Buick was a small man wearing an Ivy League cap. He testified that he and Armstrong made an unsuccessful effort to get the number of the Buick license; and that upon his return from work that evening, he reported to Sergeant Snodgrass that he had identified the Buick and its driver. At the trial, he identified defendant Headlee as the driver of the Buick which was standing on Foundry Street and which followed behind the Armstrong pickup truck to the scene of the accident, and which proceeded from the scene of the accident on its course of travel toward Fairmont.

Benson testified that as the Armstrong pickup truck proceeded down High Street in Morgantown to the point where the Buick was stopped on Foundry Street, the pickup truck was traveling at a rate of about twenty miles an hour. He testified further that he paid unusual atten-

tion to the Buick and its driver because it was such a nice automobile and the driver did not appear to be a man one would normally expect to be driving such a car. A portion of his testimony to this effect is as follows: "He was driving a very nice looking car. It was clean and I noticed the man. I mean usually a guy driving a car like that I would expect to be a sort of white collar worker and so on. The man was dressed in plain clothes wearing a sports hat. He looked more like a construction worker or something and I noticed him." Elsewhere in his testimony, Benson described the driver's headgear as a cap, rather than as a hat. He testified further that he likes to look at automobiles, particularly new automobiles.

The plaintiff testified that as she proceeded toward the scene of the accident on Route 73, she noticed "a red car" ahead, and that the driver wore a cap which might be described as a "sports cap." She testified that at the time she thought the situation was unusual "because it was still in the summer and you didn't see very many men wearing hats or caps." She was unable to identify the automobile as a Buick. It passed a truck which had been preceding it and she did not see it thereafter. She was unable to tell how the accident occurred.

Fornie Dean, a deputy sheriff, testified that Headlee lives in Cassville, Monongalia County; that formerly he and Headlee were employed together; and that Headlee "always wore a cap to that description."

William Phillips, the driver of the truck, and defendant Yates testified concerning the manner in which the accident was caused, but neither was able to describe the automobile which was identified by others as a 1961 model red and white Buick. Defendant Yates testified that he could see four headlights coming toward him immediately before the accident, and that the four headlights would indicate that they were on "one of the newer cars."

Defendant Headlee was employed at Fairmont. In going to and returning from work he traveled over Route

No. 73 as did Armstrong, Benson and the plaintiff. In addition to the 1961 model red Buick with a white top, Headlee owned a small pickup truck which he frequently used in going to and returning from work. Defendant Headlee, his wife and his mother all testified that on the day in question he drove his pickup truck to work and left the Buick at home for his wife and mother to use for the purpose of going to Morgantown to buy peaches. Both Headlee and his wife testified that he had owned a cap, apparently of the type described by Benson, but that about a month before the day of the accident, she washed it in a washing machine with the result that it shrank and otherwise became unusable. Defendant Headlee testified that he wore no cap or hat on the day in question. He testified further that, because of the fog that morning, his wife awakened him before the usual time so that he could start to work earlier than usual and that, therefore, he had passed the scene of the accident before the time of its occurrence. In the light of Benson's testimony that the driver of the Buick was a small man, defendant Headlee testified that he weighs 160 pounds and is about five feet ten and a half or eleven inches in height.

"It is the peculiar and exclusive province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses is conflicting or when the facts, though undisputed, are such that reasonable men may draw different conclusions from them." *Evans* v. *Farmer et al.,* 148 W. Va. 142, pt. 1 syl., 133 S. E. 2d 711. See also *Graham* v. *Crist,* 146 W. Va. 156, pt. 2 syl., 118 S. E. 2d 640; *Earl T. Browder, Inc.* v. *County Court of Webster County,* 145 W. Va. 696, pt. 6 syl., 116 S. E. 2d 867. "In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict is returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." *Walker* v. *Monongahela Power Co. et al.,* 147 W. Va. 825, pt. 3 syl., 131 S. E. 2d 736. See also *Dunning et al.* v. *Barlow & Wisler, Inc.,* 148 W. Va. 206, pt. 5 syl., 133 S. E. 2d 784; *Rockingham*

*Poultry Marketing Cooperative, Inc.* v. *Baltimore and Ohio Railroad Co.,* 145 W. Va. 787, pt. 1 syl., 117 S. E. 2d 504. A jury verdict based on conflicting testimony involving the credibility of witnesses and approved by the trial court, will not be set aside unless the verdict is against the plain preponderance of the evidence. *Walker* v. *Monongahela Power Co.,* 147 W. Va. 825, pt. 1 syl., 131 S. E. 2d 736; *Harless* v. *Workman,* 145 W. Va. 266, pt. 2 syl., 114 S. E. 2d 548. The jury's finding that defendant Headlee was the driver of the Buick automobile which was involved in the accident is a finding involving conflicting testimony and the credibility of witnesses. We believe that the factual issue presented was one peculiarly within the province of the jury as the trier of fact; and we cannot say that the jury's verdict in this respect was unwarranted.

After the jury had been deliberating for more than three and one-half hours, the trial court, on its own motion, read to the jury the following instruction, designated as Instruction A:

> "You have spent one and one-half days hearing this case. This case will have to be decided by some jury on the same pleadings and in all probability on the same testimony.

> "While it is true that no juror should surrender any conscientious opinion founded on the evidence, you should lay aside all pride of opinion, and each juror should re-examine for him or herself the grounds of his or her opinion, and you should consider your differences in a spirit of fairness and candor, with an honest desire to arrive at the truth, with the view of arriving at a verdict.

> "If after the three hours and one-half you have already deliberated, there is a majority and minority opinion among you, I urge those jurors differing from the majority to more closely scrutinize the evidence for the purpose of determining the correctness of their own opinions."

Counsel for defendant Headlee objected to the reading of the instruction to the jury on the ground that, in effect,

it urged the return of a majority verdict. The portion of the instruction to which the objection is urged is that portion in which the trial judge stated: "* * * I urge *those jurors differing from the majority* to more closely scrutinize the evidence for the purpose of determining the correctness of their own opinions." (Italics supplied.) It will be noted that these remarks are not directed to the jury as a whole, but rather to the minority. This represents the basis of the objection.

Through the years this Court, in line with general authority, has countenanced and approved instructions which, by proper language, encourage jurors to put aside mere pride of opinion, to avoid obduracy, to consult with and carefully consider the views of fellow-jurors and to strive for agreement without sacrificing conscientious convictions. In recent years the Court has specifically held that it is not error for a trial court to refuse to grant a so-called "hanging instruction" which emphasizes the obligation of each juror to cling to his own view or opinion. *Riddle* v. *Baltimore and Ohio Railroad Co.,* 137 W. Va. 733, 755-56, 73 S. E. 2d 793, 805; *State* v. *Taft,* 144 W. Va. 704, 709, 110 S. E. 2d 727, 732; *Earl T. Browder, Inc.* v. *County Court of Webster County,* 145 W. Va. 696, pt. 8 syl., 116 S. E. 2d 867. On the other hand, this Court has consistently recognized the province of the jury and sought to protect it from any improper invasion or coercion on the part of the trial judge.

There is a divergence of authority on the question of the propriety of instructions which urge the jurors who constitute the minority, in case of a failure to arrive at a verdict, to reexamine their views in the light of the fact that they constitute the minority. 53 Am. Jur., Trial, Section 956, page 674; 89 C.J.S., Trial, Section 481 at page 131; Anno., 19 A.L.R. 2d, Section 4, page 1262; Anno., 109 A.L.R. at page 85; Anno., 85 A.L.R. at page 1436. This Court is committed to the view that the giving to the jury of an instruction such as that given in this case constitutes reversible error. In the second point of the syllabus in *Janssen et al.* v. *Carolina Lumber Co.,* 137 W. Va. 561, 73 S. E. 2d 12, the Court held: "Where a jury has reported

that it is unable to agree, and the trial court addresses the jury urging a verdict and uses language the effect of which would be to cause the minority to yield its views for the mere purpose of reaching an agreement, and an agreement is so reached, the verdict will be set aside." The record indicates that the jury in this case returned a verdict in a half hour after the instruction was read to the jury. The instruction in the *Janssen* case was similar to Instruction A in this case, though in the former case the instruction referred to "small minority" and "great majority." The Court in that case stated (137 W. Va. at page 567, 73 S. E. 2d at page 15): "Each case, to a very great extent, necessarily depends upon its own facts and circumstances." The Court is of the opinion that the giving of Instruction A, over the objection of counsel for the defendant Headlee, constituted reversible error. The evil we perceive in the instruction is that the admonition of the trial judge was directed merely to the jurors constituting the minority rather than to the jury as a whole.

Defendant Headlee objected to the giving of Plaintiff's Instruction No. 2 and Plaintiff's Instruction No. 4 on the ground that both omit the element of proximate cause; and the giving of such instructions is assigned as error. These instructions are as follows:

### "PLAINTIFF'S INSTRUCTION NO. 2

"The Court instructs the jury that the requirement that the plaintiff must prove her case by a preponderance of the evidence has to do with the weight of the evidence, and if after the jury considers all the evidence in the case, and from all this believe that the evidence in favor of Esther Levine outweighs that of the defendants even in the slightest degree, then she has proved her case by a preponderance of the evidence and you should find for the plaintiff unless you believe she was guilty of contributory negligence."

### "PLAINTIFF'S INSTRUCTION NO. 4

"The court instructs the jury that the terms negligence, carelessness, and lack of ordinary care, are the same and that negligence, as spoken of in

the court's instruction, means the failure to use such care and caution as a reasonable and prudent man would ordinarily have used in the conduct of his own affairs under the circumstances shown in the evidence. Further, ordinary care means such care as is taken by men of ordinary sense and prudence to avoid injury to their own interest. It varies with the circumstances of the particular case and if you find that Raymond Headlee, Jr., failed to exercise that degree of care which careful men would take in the same situation to avoid injury to themselves, then you may find that he was guilty of negligence and should find for the plaintiff, Esther Levine, unless you believe she was guilty of contributory negligence."

The objection is well taken as to both instructions, especially in relation to Plaintiff's Instruction No. 4. That instruction, in effect, tells the jury that if they find that defendant Headlee was guilty of negligence, they "should" find for the plaintiff. Negligence is not actionable unless it proximately causes the injury or unless it concurs with negligence of one or more others proximately to cause the injury. *Jones* v. *Smithson,* 119 W. Va. 389, pt. 3 syl., 193 S. E. 802; *Miller* v. *Douglas,* 121 W. Va. 638, pt. 3 syl., 5 S. E. 2d 799; *Bragg* v. *C. I. Whitten Transfer Co.,* 125 W. Va. 722, 726, 26 S. E. 2d 217, 220; *Davis* v. *Fire Creek Fuel Co.,* 144 W. Va. 537, pt. 10 syl., 109 S. E. 2d 144; *Metro* v. *Smith,* 146 W. Va. 983, 124 S. E. 2d 460; *Pygman* v. *Helton,* pt. 3 syl., decided February 25, 1964, 148 W. Va. 281, 134 S. E. 2d 717. A binding instruction must be complete in itself and any omission from its language cannot be cured by reference to other instructions given. *Graham* v. *Wriston,* 146 W. Va. 484, 120 S. E. 2d 713, 726; *Lawrence* v. *Nelson,* 145 W. Va. 134, pt. 7 syl., 113 S. E. 2d 241. Counsel for the plaintiff contends that the omission of the element of proximateness from the two instructions cannot be regarded as prejudicial error because it appears as a matter of law that the element of proximateness was present in the negligence of Headlee. We are unable to agree with that contention. On the contrary, we believe the questions of negligence and proximate cause were proper ones for the jury.

The defendants joined in a written motion to set aside the verdict and grant a new trial, but each assigned grounds separately. As we have observed previously, defendant Yates did not appeal. This calls for an examination of the status of the verdict and judgment as they relate to him.

At common law judgments were not severable and, if a judgment were set aside as to one defendant, it was necessary to set it aside as to the remaining judgment defendants, even though they had not appealed. This common law rule has been changed by Code, 1931, 58-5-25, which authorizes this Court to reverse a judgment "in whole or in part." Following is the first point of the syllabus of *Buskirk et al.* v. *Musick,* 100 W. Va. 247, 130 S. E. 435: "Where one party only appeals, but his rights and the rights of others are not only involved in the same question, but are equally affected by the decree or judgment, the appeal of the one will call for an adjudication also of the rights of those not appealing." The same proposition is stated conversely in the fourth point of the syllabus of *Stannard Supply Co. et al.* v. *Delmar Co., et al.,* 110 W. Va. 560, 158 S. E. 907, as follows: "Where parties to a suit stand upon distinct and unconnected grounds, their rights being separate and not equally affected by the same decree, the appeal of one will not bring up for adjudication the rights of the other." Following is the second point of the syllabus of *Weekly* v. *Hardesty et al.,* 48 W. Va. 39, 35 S. E. 880: "An appeal brings up the entire record, and any error to the prejudice of an appellee not appealing or cross assigning error may be corrected or reversed, though his right do not depend on the same errors assigned by the appellant, but is even separate from or hostile to it, if justice requires such correction on reversal." Statements similar to those quoted immediately above are found in the following cases: *In re Estate of John Groves, Admr.,* 120 W. Va. 373, 381-82, 198 S. E. 142, 146; *Hyre* v. *Johnson,* 107 W. Va. 524, 529-30, 149 S. E. 385, 387; *White* v. *White,* 66 W. Va. 79, pt. 4 syl., 66 S. E. 2; *Johnson* v. *Ludwick,* 58 W. Va. 464, 471, 52 S. E. 489, 492; *Ward et al.* v. *Brown,* 53 W. Va. 227, 234-35, 44 S. E. 488, 491; *Bowlby* v. *De Witt,* 47 W. Va.

323, pt. 2 syl., 34 S. E. 919; *Vance Shoe Co. et al. v. Haught et al.*, 41 W. Va. 275, pt. 7 syl., 23 S. E. 553; *Ferguson* v. *Millender*, 32 W. Va. 30, 32, 9 S. E. 38, 39; *Newman* v. *Mollohan*, 10 W. Va. 488, 499-500; *Vandiver* v. *Roberts*, 4 W. Va. 493, pt. 2 syl.; *Broudy-Kantor Co.* v. *Levin*, 135 Va. 283, 116 S. E. 677.

"The rule that reversal on appeal by a party does not justify reversal in favor of nonappealing parties, however, is not invariable, and where the judgment is not severable, or where the rights and interests of the parties are so intermingled and interdependent that reversal in favor of one would injuriously affect the rights of his co-parties, the court, if reversal is proper as to appellant, may reverse as to nonappealing parties." 5B C.J.S., Appeal & Error, Section 1920, page 415.

In *Pence* v. *Bryant*, 73 W. Va. 126, 80 S. E. 137, a judgment was rendered against three defendants in a tort action. The Court held that, upon motion of the three defendants for a new trial and the plaintiff's motion for judgment on the verdict as to two defendants only, the trial court had the right to enter judgment on the verdict as to two defendants and to "set aside the verdict as to the third, *of whose guilt there was no proof*." (Italics supplied.) To the same effect see *Martin* v. *Appalachian Electric Power Co.*, 109 W. Va. 129, pt. 1 syl., 153 S. E. 245. But those cases are not precedents for the present case in which, for instance, the prejudicial error of the trial court in granting Instruction A was just as prejudicial to Yates as to Headlee. *Mason* v. *City of Bluefield*, 105 W. Va. 209, 141 S. E. 782, involved an action against two defendants "for a single act constituting a tort." Upon appeal by both defendants from a judgment rendered against them, the Court affirmed the judgment as to one but reversed it as to the other, apparently because no basis of liability was proved as to the latter. *Stone* v. *Rudolph*, 127 W. Va. 335, 32 S. E. 2d 742, involved a judgment in favor of the plaintiff against Rudolph, the owner of an automobile, and against his employee, Hopkins. Hopkins was operating the automobile and the plaintiff was riding with him as a guest passenger at the time he was injured. The em-

ployee had been forbidden by his employer to transport guest passengers. The Court held that the employer, in such circumstances, could not be held liable unless it appeared that the driver was, at the time the plaintiff sustained his injuries, operating the automobile within the general scope of his employment and in a wilful and wanton manner. The Court held that the proof did not establish the elements of wilfulness and wantonness; and therefore the verdict of the jury was affirmed as to the employee but the verdict was set aside so far as it related to the employer and he was awarded a new trial.

*Hutchinson* v. *Montgomery Memorial Park Corporation et al.,* 128 W. Va. 419, 36 S. E. 2d 889, involved a tort action against five defendants to recover damages for personal injuries arising from a motor vehicle collision. The jury returned a verdict in favor of the plaintiff against two defendants named Tabit and one named Fannin, but in favor of defendant Berry. The trial court directed a verdict for defendant Montgomery Memorial Park Corporation. The Tabits and Fannin appealed. This Court held that the trial court committed prejudicial error in not granting a motion for a continuance made in behalf of all the defendants. In defining the question presented for decision, the Court stated (128 W. Va. at page 426, 36 S. E. 2d at page 892): "This action is against five co-defendants as joint tort feasors. Should the judgments as to all be reversed, the verdicts set aside, and a new trial awarded to all defendants? These questions are not without difficulty." The Court then proceeded to refer to some of the prior decisions which have been referred to previously in this opinion and arrived at a conclusion which is embraced in the following language quoted from the opinion: "All defendants stood on the motion for a continuance and notwithstanding that two of them were not prejudiced by the proceedings had subsequent to that motion, their joint and several liability having been alleged, we think that none of the defendants should be discharged from liability by a trial in which material and vital testimony bearing on the question of liability, was not offered because of the absence of a witness. In order that none

of the defendants be prejudiced in any of their future rights, their liability or nonliability *should be determined in a trial free from prejudicial error.*" (Italics supplied.) In that case, therefore, verdicts were set aside and a new trial was awarded as to all defendants, including two who did not appeal.

*Armstead* v. *Holbert*, 146 W. Va. 58, 122 S. E. 2d 43, involved an action by the plaintiff against three defendants to recover damages for personal injuries resulting from a motor vehicle accident. During the trial, two of the defendants objected to and moved to strike certain testimony. The third defendant did not make such an objection or motion. All of the three defendants appealed. In the third point of the syllabus the Court held: "Where the rights and issues of a cause of action in behalf of, or against, several co-parties are interdependent and injustice might result from a reversal as to less than all of the parties, the appellate court, in reversing the case as to one or more of the parties, on the ground of error in the admission of prejudicial testimony, will reverse the case as to all, even though the admission of such testimony was not specifically assigned as error by all parties." See Anno. 143 A.L.R. 7. "Where the error pervades the entire case, or where the rights of all parties are so intermingled that injustice to some or all may result from partial reversal, the entire judgment must be reversed." 5 Am. Jur. 2d, Appeal and Error, Section 949, page 376.

The two most recent opinions of this Court referred to above establish the proposition that, in proper circumstances and for prejudicial error in the trial, a judgment in a tort action may be set aside as to a defendant who failed to object in the trial court and also as to one or more defendants who neither objected nor appealed. In the background of these precedents, we must decide the proper action to take in relation to defendant Yates who has not appealed.

Having before us the appeal only as it relates to defendant Headlee, no error having been assigned by any party to the judgment as to Yates, and believing that no injus-

tice will result from a reversal of the judgment only in part, we do not undertake to disturb the judgment as it relates to defendant Yates. We consider on this appeal only the action of the trial court in entering judgment on the verdict as it relates to defendant Headlee.

For reasons stated in this opinion, the judgment of the Circuit Court of Monongalia County is reversed in part; a new trial is granted to Homer R. Headlee, Jr.; the judgment remains undisturbed as to defendant Yates; and the case is remanded to the trial court for such further proceedings as may be proper and consonant with this opinion.

*Reversed in part;*
*remanded with directions.*